Filed 2/4/21  In re Daniel H. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re DANIEL H., a Person Coming Under the Juvenile Court Law. | |
| | D076825 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J241912) |
| v. | |
| DANIEL H., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Carolyn M. Caietti and Ana Espana, Judges.  Affirmed as modified.

Bruce L. Kotler, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael P. Pulos, Kathryn A. Kirschbaum, and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

The juvenile court adjudged Daniel H. a ward of the court based on true findings on one count of attempting a criminal threat (Pen. Code, §§ 422, 664; further statutory references are to the Penal Code), one count of threatening a school official (§ 71), three counts of assault with a deadly weapon (§ 245, subd. (a)(1)), one count of assault with force likely to produce great bodily injury (§ 245, subd. (a)(4)), and two counts of robbery (§ 211). The court found that the assault and robbery offenses were committed for the benefit of, at the direction of, or in association with a criminal street gang. (§ 186.22, subd. (b)(1).) The court also found that Daniel personally used a deadly or dangerous weapon in connection with the robbery offenses. (§ 12022, subd. (b)(1).) As to one count of assault with a deadly weapon, the court found that Daniel personally inflicted great bodily injury on the victim. (§ 12022.7, subd. (a).) As to the count of assault with force likely to produce great bodily injury, the court found that Daniel personally used a deadly or dangerous weapon and that he personally inflicted great bodily injury.

Daniel appeals. He contends (1) the evidence was insufficient to support the finding that he committed robbery, (2) the court could not find that he committed both assault with a deadly weapon and assault with force likely to produce great bodily injury based on the same incident, and (3) the court could not impose the enhancement for personal use of a deadly or dangerous weapon on the count of assault with force likely to produce great bodily injury. The Attorney General concedes the last contention, and we agree the enhancement must be stricken. Daniel's remaining contentions are unpersuasive. We therefore modify the judgment to remove the enhancement and reduce Daniel's maximum term of confinement by one year. The judgment, as modified, is affirmed.

FACTS

This matter arises from four separate incidents, only two of which are relevant to Daniel's contentions on appeal. The two relevant incidents are discussed below. For purposes of this section, we state the facts in the light most favorable to the judgment. (See *In re Raymundo M.* (2020) 52 Cal.App.5th 78, 82, fn. 2.)

On April 17, 2019, a teenaged lifeguard took a break from his shift at a waterpark to get a meal at a nearby restaurant. While the lifeguard was waiting for his food, Daniel approached him with several other minors and made a gang sign. Daniel said he was in a gang and asked the lifeguard if he was as well. The lifeguard said he was not, and Daniel responded, " 'Okay, we're cool.' " Daniel shook the lifeguard's hand, which the lifeguard thought was "odd," and the lifeguard ate his meal.

Later, after the lifeguard's shift was over, he walked to his car with a coworker. It was around 10:30 p.m. They saw Daniel and his friends, and the lifeguard told his coworker to hurry because he did not want to interact with them again. The lifeguard and his coworker were unsuccessful. Daniel and another minor ran up and stopped them. Daniel made a gang sign and yelled that he was in a gang. The lifeguard said he just wanted to go home, but Daniel and his friend said they were going to "attack" them. Daniel pulled his hand out of his waistband and acted as if he had a gun. He made his hand into the shape of a pistol, pointed it at the coworker's head, and said, " 'Bang.' " Daniel said he had "no problem" killing them. He pulled out a knife and stabbed at the coworker's stomach and neck. The coworker jumped backward; he would have been hit if he had not moved. Daniel then swung the knife toward the lifeguard. He would have been hit, too, if he had

not moved away.  The coworker sought reassurance, but Daniel said, " 'I have no problem killing you.' "

Daniel's demeanor changed, and he asked if they wanted to "go bang up some places" together.  The lifeguard and his coworker declined.  Daniel's friend circled behind them, which made them uncomfortable.  The friend asked for $20, which the lifeguard refused.  But then Daniel asked for two dollars for bus fare, and the lifeguard and his coworker agreed "because we weren't about to chance getting stabbed for two dollars."  They "feared for [their] lives."  The coworker later testified, "I felt like I had to give him the money."  The lifeguard and his coworker each handed over two dollars and then "bolted towards [the coworker's] truck," where they waited until Daniel and his friend left.

Two days later, a student was walking with friends to a public transit center.  He saw Daniel and another minor making gang signs.  The student started running away but he tripped.  Daniel and the other minor attacked him.  Daniel had a knife and stabbed the student several times.  Daniel and his friend ran away when the student activated a Taser he was carrying.  The student suffered stab wounds on his arms and back.  He spent two days in the hospital.

DISCUSSION

I

*Sufficiency of the Evidence for Robbery*

Daniel first contends the evidence does not support the court's finding that he committed robbery against the lifeguard and his coworker.  "Our review of [Daniel's] substantial evidence claim is governed by the same standard applicable to adult criminal cases.  [Citation.]  'In reviewing the sufficiency of the evidence, we must determine "whether, after viewing the

4

evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.]' [Citation.] ' "[O]ur role on appeal is a limited one." [Citation.] Under the substantial evidence rule, we must presume in support of the judgment the existence of every fact that the trier of fact could reasonably have deduced from the evidence. [Citation.] Thus, if the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment.' " (*In re V.V.* (2011) 51 Cal.4th 1020, 1026.)

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) "Robbery is larceny with the aggravating circumstances that 'the property is taken from the person or presence of another . . .' and 'is accomplished by the use of force or by putting the victim in fear of injury.' " (*People v. Anderson* (2011) 51 Cal.4th 989, 994.) "[T]o support a conviction of larceny the defendant must have intended to steal the property at the time he took it; if the intent arose after the act of taking, the crime may be embezzlement or a lesser offense but it cannot be larceny. [Citations.] The same rule must therefore apply to robbery: 'Since robbery is but larceny aggravated by the use of force or fear to accomplish the taking of property from the person or presence of the possessor [citation], the felonious intent requisite to robbery is the same intent common to those offenses that, like larceny, are grouped in the Penal Code designation of "theft." ' (Fn. omitted.) [Citation.] We conclude that like the nonviolent taking in larceny, the act of force or intimidation by which the taking is accomplished in robbery must be motivated by the intent to steal in order to

5

satisfy the requirement of section 20: if the larcenous purpose does not arise until after the force has been used against the victim, there is no 'joint operation of act and intent' necessary to constitute robbery." (*People v. Green* (1980) 27 Cal.3d 1, 54, fn. omitted; see § 20 ["In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence."].)

Daniel contends that the union of act and intent necessary to support the court's robbery findings is absent. He argues that his acts of intimidation were unaccompanied by any intent to steal and "there was nothing about the manner of the request for money from [Daniel] or his companion that evinced a threat of any kind." Daniel is incorrect. Based on Daniel's prior threats and intimidation, the court could reasonably find that he took money from the victims by force or fear. His "request" was not a request at all, but a demand backed by the implied threat of violence. The victims testified that they understood Daniel's "request" as a threat, and they complied out of fear for their lives.

As one court explained, " 'The element of fear for purposes of robbery is satisfied when there is sufficient fear to cause the victim to comply with the unlawful demand for his property.' [Citations.] It is not necessary that there be direct proof of fear; fear may be inferred from the circumstances in which the property is taken." (*People v. Morehead* (2011) 191 Cal.App.4th 765, 774-775.) "The requisite fear need not be the result of an express threat or the use of a weapon. [Citations.] Resistance by the victim is not a required element of robbery [citation], and the victim's fear need not be extreme to constitute robbery [citation]. All that is necessary is that the record show ' " 'conduct, words, or circumstances reasonably calculated to produce fear . . . .' " ' [Citation.] [¶] Intimidation of the victim equates with fear.

[Citation.] An unlawful demand can convey an implied threat of harm for failure to comply, thus supporting an inference of the requisite fear." (*Id.* at p. 775.)

On reply, Daniel argues, "Neither [victim] characterized the request for money as a demand or order. Thus, while [the victims] may have been acting under fear, there was insufficient evidence that [Daniel's] acts of force and intimidation were motivated by an intent to steal." Daniel's focus is misplaced. The court could reasonably find that Daniel's "request" was a demand for money. Rather than being exculpatory, the fact that Daniel's friend initially asked for $20 supports the inference that their goal was to obtain money from the victims. Because that was Daniel's intent, and it was accomplished by force or fear, the evidence supports the court's finding that he committed robbery. "Contrary to [Daniel's] arguments, the failure of the evidence to conclusively rule out various scenarios under which [he] might not be guilty of robbery does not render the evidence insufficient to support the robbery verdict." (*People v. Bolden* (2002) 29 Cal.4th 515, 553.)

II

*Multiple Assault Findings*

Daniel next contends the court could not have made true findings of both assault with a deadly weapon (§ 245, subd. (a)(1)) and assault with force likely to cause great bodily injury (§ 245, subd. (a)(4)) based on the transit center attack. He argues that the two subdivisions are different statements of the same offense or, alternatively, that assault with force likely to cause great bodily injury is a lesser included offense of assault with a deadly weapon. These issues are currently under review by our Supreme Court. (See *People v. Aguayo* (2019) 31 Cal.App.5th 758, review granted May 1, 2019, S254554.) Despite their importance, we need not address them here.

7

We conclude that even if the two subdivisions are different statements of the same offense, or one is a lesser included offense of the other, Daniel was properly subject to both because they were based on different acts of assault.

"In general, a person may be *convicted* of, although not *punished* for, more than one crime arising out of the same act or course of conduct. 'In California, a single act or course of conduct by a defendant can lead to convictions "of *any number* of the offenses charged." ' " (*People v. Reed* (2006) 38 Cal.4th 1224, 1226.) "However, a 'judicially created exception to this rule prohibits multiple convictions based on necessarily included offenses.' " (*People v. Sanders* (2012) 55 Cal.4th 731, 736.) This exception has been extended to prohibit multiple convictions based on different statements of the same offense. (*People v. Vidana* (2016) 1 Cal.5th 632, 651 (*Vidana*).)

These principles presuppose that the multiple convictions are based on the same act or course of conduct. Where, as here, the convictions (or true findings) are based on different acts, "a separate conviction is permissible for each completed charged offense, even if the defendant had the same intent and objective in committing multiple crimes and even if the defendant committed the crimes at or near the same time." (*People v. Kopp* (2019) 38 Cal.App.5th 47, 62 (*Kopp*), review granted Nov. 13, 2019, S257844.)

For example, in *Kopp*, this court affirmed multiple assault convictions, based on the same attack, where the evidence showed "separate acts" underlying each count of assault. (*Kopp, supra*, 38 Cal.App.5th at p. 63, review granted.) One count was "based on the use of a knife," and another was "based on punches and kicks to the head." (*Ibid*.) This court concluded, "The fact that these separate acts occurred during the same altercation does not bar the jury from convicting [the defendant] under both counts." (*Ibid*., fn. omitted.)

Daniel attempts to distinguish *Kopp* because it involved a multifaceted attack, with both knives and bare hands and feet, whereas the attack here involved the repeated stabbing with the same knife. This distinction is not persuasive. *Kopp* held that multiple acts within the same attack could constitute multiple assaults, since an assault requires only a single act for its completion. (*Kopp, supra,* 38 Cal.App.5th at p. 63, review granted; see § 240.) The same logic applies here. Daniel committed multiple acts of assault during the attack and could properly be held to account for each. (See *People v. Campbell* (2017) 12 Cal.App.5th 666, 673 ["Multiple convictions for violating a statute are appropriate . . . where the actus reus prohibited by the statute (the gravamen of the offense) is committed more than once."].) The fact that Daniel committed "identical" acts "in short succession against a single victim" does not bar multiple true findings of assault. (See *People v. Harrison* (1989) 48 Cal.3d 321, 334 (*Harrison*).) Cases involving multiple convictions for a single act are inapplicable. (See *People v. Cota* (2020) 44 Cal.App.5th 720, 729-730, review granted April 22, 2020, S261120 [single act of hitting the victim with a chair]; *People v. Brunton* (2018) 23 Cal.App.5th 1097, 1101, 1107 (*Brunton*) [single act of choking the victim with a twisted towel]; see also *In re Jonathan R.* (2016) 3 Cal.App.5th 963, 967 [single act of stabbing].)

Daniel suggests that his stabbings should be seen as a single course of conduct. He analogizes the attack to a series of thefts or embezzlement. (See *Vidana, supra,* 1 Cal.5th at pp. 635, 650.) But theft-based offenses have historically been treated differently, and courts have refused to extend this logic to non-theft offenses. (See, e.g., *People v. Washington* (1996) 50 Cal.App.4th 568, 578-579.) Moreover, the fact that the stabbings occurred in the same manner, during the same attack, and against a single victim is

9

not dispositive. (See *Kopp*, *supra*, 38 Cal.App.5th at p. 63, review granted; *People v. Johnson* (2007) 150 Cal.App.4th 1467, 1477; see also *Harrison*, *supra*, 48 Cal.3d at p. 334.)

Finally, we note that although the court made true findings on both counts of assault, it did not punish Daniel for both. Like the court in *Kopp*, it found that section 654 applied. (See *Kopp*, *supra*, 38 Cal.App.5th at p. 63, fn. 11, review granted.)

### III

### *Personal Weapons Use Enhancement*

As to both assault findings arising from the transit center stabbing, Daniel contends the court erred by imposing enhancements for personal use of a deadly or dangerous weapon. (§ 12022, subd. (b)(1).) Daniel is incorrect that the enhancement was applied to both assault findings. The record shows that it was imposed only for the finding of assault with force likely to cause great bodily injury. (§ 245, subd. (a)(4).) As to this finding, the Attorney General agrees that the enhancement should not have been imposed. We agree. (See *Brunton, supra*, 23 Cal.App.5th at p. 1107.) We therefore modify the judgment accordingly.

### DISPOSITION

The judgment is modified to strike the personal weapons use enhancement imposed on count 10 (assault with force likely to cause great bodily injury) and to reflect that the maximum term of confinement is 26 years 8 months. As so modified, the judgment is affirmed. On remand,

the trial court shall prepare an amended adjudication minute order reflecting these modifications.

GUERRERO, J.

WE CONCUR:

BENKE, Acting P. J.

IRION, J.