Filed 7/8/21  P. v. Jackson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C089347 |
| Plaintiff and Respondent, | (Super. Ct. No. 18FE009188) |
| v. | |
| MARTAVIUS ANTON JACKSON, | |
| Defendant and Appellant. | |

A jury found defendant Martavius Anton Jackson guilty of assault with a deadly weapon and assault by means of force likely to produce great bodily injury.  (Pen. Code, § 245, subd. (a)(1), (4) [statutory section references that follow are found in the Penal Code unless otherwise set forth].)  On appeal, defendant contends:  (1) his duplicative convictions under section 245 arising from the same assault based on a single act must be reversed pursuant to section 954; and alternatively, (2) he cannot be convicted under both

1

section 245, subdivisions (a)(1) and (a)(4) because assault by force likely to produce great bodily injury is a lesser included offense of assault with a deadly weapon.

We will vacate defendant's conviction for assault by means of force likely to cause great bodily injury, which duplicates his conviction for assault with a deadly weapon where, as here, both crimes are based on the same act. Because we agree with defendant's first argument, we need not reach his alternative argument. As modified, we will affirm with directions.

## FACTS AND HISTORY OF THE PROCEEDINGS

Defendant was charged in count one of an information with assault with a deadly weapon (§ 245, subd. (a)(1)), and in count two with assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4)). The information further alleged as to both counts that defendant personally inflicted great bodily injury (§ 12022.7, subd. (a)).

D.B., and his mother, P.S., lived in adjoining apartment units. D.B. was acquainted with defendant and his girlfriend, S.P., and had a cordial relationship with them. On the evening of May 3, 2018, D.B. stepped outside his apartment to have a cigarette, where he found his mother crying. When D.B. asked what was wrong, P.S. replied, "that the neighbors had threatened her" and that "she was going to call the police." She pointed to a car and said that S.P. and defendant were the ones who had threatened her. S.P. and defendant, still in the car, screamed, "bitch" toward D.B. and his mother, so D.B. walked towards the car. As he got closer, he saw S.P. standing outside of the car by the driver's side door and defendant sitting in the passenger seat inside the car. D.B. asked S.P., "[W]hat's wrong? What's going on?" in an attempt to defuse the situation. Defendant then got out of the car, aggressively moved toward D.B., and repeatedly yelled, "You need to be talking to me." D.B. responded that he was talking to defendant. The two continued exchanging words, then defendant swung a closed fist at D.B.'s head. He missed, and S.P. attempted to break things up. D.B. stepped back and

2

entered a boxing stance. Defendant then pulled out a knife, and D.B. asked, "What do you got that for?" D.B. stepped back and began to walk away before turning and punching defendant in the face. Defendant then came toward D.B. with the knife and stabbed him in the stomach. After stabbing D.B., defendant ran to the car and drove away.

D.B., who was covered in blood, glanced down and it "[l]ooked like [his] stomach was falling out[.]" After the police arrived, D.B. was taken to the hospital where he received 12 staples to close his stomach wound.

The jury found defendant guilty as charged. Thereafter, the trial court sentenced defendant to an aggregate term of six years in state prison as follows: the midterm of three years on count one plus three years for the great bodily injury enhancement under count one. On count two, the trial court sentenced defendant to the midterm of three years, stayed (§ 654), plus three years for the great bodily injury enhancement under count two, stayed (§ 654).

## DISCUSSION

Defendant contends he committed only one offense of assault and the duplicative offense in count two therefore must be vacated because both arose from a single act: stabbing the victim. We agree.

Section 954 generally governs multiple offenses or multiple statements of an offense. Section 954 allows the People to join, in one action, different offenses connected in their commission, different statements of the same offense, and different offenses of the same class of crimes. Though section 954 " 'authorizes multiple convictions for different or distinct offenses, [it] does not permit multiple convictions for a different statement of the same offense when it is based on the same act or course of conduct.' " (*People v. Vidana* (2016) 1 Cal.5th 632, 650 [defendant cannot be convicted of larceny and embezzlement for the same conduct, even if the crimes have different

3

elements and are not lesser included offenses] (*Vidana*).)  Whether statutory provisions "define different offenses or merely describe different ways of committing the same offense properly turns on the Legislature's intent in enacting these provisions, and if the Legislature meant to define only one offense, we may not turn it into two." (*People v. Gonzalez* (2014) 60 Cal.4th 533, 537 (*Gonzalez*).)

In *Gonzalez*, the defendant was convicted of oral copulation of an unconscious person in violation of section 288a, subdivision (f) and oral copulation of an intoxicated person in violation of section 288a, subdivision (i) based on the same act.  (*Gonzalez, supra*, 60 Cal.4th at p. 536.)  In concluding that the Legislature intended these subdivisions to define separate offenses, the court primarily relied on the structure of the statute:  "Subdivision (a) of section 288a defines what conduct constitutes the act of oral copulation.  Thereafter, subdivisions (b) through (k) define various ways the act may be criminal.  Each subdivision sets forth all the elements of a crime, and each prescribes a specific punishment.  Not all of these punishments are the same.  That each subdivision of section 288a was drafted to be self-contained supports the view that each describes an independent offense, and therefore section 954 is no impediment to a defendant's conviction under more than one such subdivision for a single act." (*Id.* at p. 539.)

Subsequently, in *Vidana*, our Supreme Court considered whether larceny and embezzlement were different offenses, or merely different statements of the same offense.  (*Vidana, supra*, 1 Cal.5th at p. 648.)  The court noted that larceny and embezzlement have different elements and are found in "self-contained statute[s]." (*Ibid.*)  However, the court also looked to section 490a, which provides that any statute that mentions larceny or embezzlement " 'shall hereafter be read and interpreted as if the word "theft" were substituted therefor.' " (*Ibid.*)  The court reasoned the "obvious intent" of section 490a "was to create a single crime of theft." (*Ibid.*)  Additionally, the court noted that larceny and embezzlement "generally have the same punishment." (*Id.* at

4

pp. 648-649.)  Thus, the court concluded, larceny and embezzlement "are simply different ways of describing the behavior proscribed by those statutes."  (*Id.* at p. 649.)

As to the crimes charged here, section 245, subdivision (a)(1) previously set forth a single offense of "assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury. . . ."  (*In re Mosley* (1970) 1 Cal.3d 913, 919, fn. 5.)  Thus, "[t]he offense of assault by means of force likely to produce great bodily injury is not an offense separate from . . . the offense of assault with a deadly weapon."  (*Ibid.*; see *In re Jonathan R.* (2016) 3 Cal.App.5th 963, 972 [noting that under former § 245, assault with a deadly weapon and assault by means likely to produce bodily injury were two alternative means of committing the same offense] (*Jonathan R.*).)  In cases involving a weapon that was not itself inherently dangerous, the two clauses of section 245, subdivision (a)(1) were considered "functionally identical" because noninherently dangerous instruments become deadly weapons only by "their use in a manner capable of producing great bodily injury." (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1030, 1035.)

In 2011, the two variants of assault described under former section 245, subdivision (a)(1) were placed in separate paragraphs of subdivision (a), that is paragraphs (a)(1) and (a)(4).  (Stats. 2011, ch. 183, § 1.)  "According to the bill's author, the purpose of the amendment was to make it easier for prosecutors and defense attorneys to determine whether a defendant's past aggravated assault conviction involved the use of a weapon when examining a defendant's criminal history," since past aggravated assault convictions involving the use of a weapon are treated differently for purposes of certain recidivist provisions than those not involving a weapon.  (*Jonathan R.,* at p. 971 [citing Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1026 (2011-2012 Reg. Sess.) Apr. 26, 2011, pp. 1-2].)

As amended, section 245 now reads, in relevant part:  "(a)(1) Any person who commits an assault upon the person of another with a deadly weapon or instrument other

5

than a firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment. [¶] . . . [¶] (4) Any person who commits an assault upon the person of another by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment."

Courts have reached differing conclusions as to whether these two subsections constitute different offenses. In *Jonathan R.*, the First District Court of Appeal felt itself constrained by "[t]he Supreme Court's latest word on the issue of multiple convictions," that is *Gonzalez, supra*, 60 Cal.4th 533. (*Jonathan R., supra*, 3 Cal.App.5th at p. 969.) The *Jonathan R.* court explained: "The statutory structure of section 245 is indistinguishable from that of section 288a. Each subdivision of section 245 sets out different circumstances under which a person can commit aggravated assault, and each subdivision specifies the punishment applicable to those circumstances. The reasoning of *Gonzalez* would therefore classify each subdivision as a separate offense and permit more than one conviction based upon the violation of more than one subdivision of section 245." (*Id.* at p. 970.) The court resisted consideration of section 245's legislative history, reasoning, "The rationale of *Gonzalez* precludes such an analysis." (*Jonathan R.,* at p. 971.)

While the court in *Jonathan R.* concluded the two subdivisions constituted separate offenses, it vacated the defendant's conviction under section 245, subdivision (a)(4) on the ground it was necessarily included within his conviction under subdivision (a)(1) based on the rationale of *People v. Aguilar, supra*, 16 Cal.4th at pages 1029-1036. (*Jonathan R., supra*, 3 Cal.App.5th at pp. 971-975.) Specifically, "[w]hen a defendant commits an assault using an instrument other than a firearm, the instrument is considered to be a 'deadly weapon,' and therefore to qualify under section 245, subdivision (a)(1),

6

only if the instrument is used in a manner that is likely to produce death or great bodily injury. For that reason, when assault with a deadly weapon other than a firearm is found to have occurred, the trier of fact necessarily must have concluded the defendant used or attempted to use force likely to produce great bodily injury, since that likelihood is what makes a weapon or instrument 'deadly.' " (*Id.* at p. 973.)

More recently, the Fourth District Court of Appeal rejected the holding in *Jonathan R., supra*, 3 Cal.App.5th at pages 971-975, that subdivisions (a)(1) and (a)(4) of section 245 constitute separate offenses. (*People v. Brunton* (2018) 23 Cal.App.5th 1097 (*Brunton*).) In *Brunton*, the court reasoned that G*onzalez* was no longer the " 'Supreme Court's latest word on the [section 954] issue' " because the Supreme Court had since issued its decision in *Vidana, supra*, 1 Cal.5th 632. (*Brunton,* at p. 1106.) The *Brunton* court reasoned that in *Vidana*, the Supreme Court "undertook a detailed analysis of the legislative history behind the larceny and embezzlement statutes, concluding they constituted mere restatements of the same offense, even though they 'have different elements,' 'neither is a lesser included offense of the other,' and they are found in 'self-contained' statutes." (*Brunton,* at pp. 1106-1007.)

The *Brunton* court then considered the legislative history of section 245, including prior judicial construction that concluded subdivision (a)(1) set forth only one offense, and subsequent legislative statements indicating that amendments that separated this subdivision into two separate paragraphs were mere technical changes that did not create any new felonies. (*Brunton, supra*, 23 Cal.App.5th at p. 1107.) The court concluded when an assault is based on "a defendant's single act of using a noninherently dangerous object in a manner likely to produce great bodily injury, section 245[, subdivisions] (a)(1) and (4) are merely different statements of the same offense such that the defendant may not be convicted of violating both subparts of the subdivision." (*Id.* at p. 1107.)

Here, defendant committed one discrete act using a knife, not a multifaceted attack. This is comparable to *Brunton*. We agree with the *Brunton* court's reasoning that

when both types of aggravated assault are "based on a defendant's single act of using a noninherently dangerous object in a manner likely to produce great bodily injury," the defendant may not be convicted twice. (*Brunton, supra*, 23 Cal.App.5th at p. 1107.) Both count one and count two were based on the single act of defendant attacking D.B. with a knife, a noninherently dangerous object. (See *People v. Aledamat* (2019) 8 Cal.5th 1, 6 ["Because a knife can be, and usually is, used for innocent purposes, it is not among the few objects that are inherently deadly weapons"].) The prosecutor made clear in closing that the two different counts were based on the same conduct, a stabbing causing great bodily injury. As the jury's verdict necessarily implies, the knife was used by defendant in a manner likely to produce great bodily injury, and thus became a deadly weapon under the circumstances.

Applying *Brunton* here, we conclude that the convictions in counts one and two were based on different statements of the same offense because both were based on defendant's use of a noninherently dangerous object in a manner likely to produce great bodily injury. Both counts are based on one indivisible act. Thus, defendant cannot be twice convicted of one assault where both convictions are different statements of the same offense. (*Vidana, supra*, 1 Cal.5th at p. 650.) Accordingly, we vacate defendant's conviction in count two for assault by means of force likely to cause great bodily injury. (§ 245, subd. (a)(4).) He remains convicted in count one of assault with a deadly weapon, which fits his crime of stabbing the victim with a knife and which the trial court used as the principal term in sentencing, staying the term on count two. (§ 245, subd. (a)(1); *People v. Ryan* (2006) 138 Cal.App.4th 360, 371 [reviewing court retains the conviction that more completely covers the defendant's act].)

## DISPOSITION

The judgment is modified to vacate defendant's conviction on count two, assault by means likely to produce great bodily injury. Defendant's prison sentence is

unchanged.  The trial court is directed to correct the abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.

                                                                 
HULL, Acting P. J.

We concur:


MURRAY, J.


KRAUSE, J.