Filed 9/26/22 P. v. Mojarro CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE, | F082145 |
| Plaintiff and Respondent, | (Super. Ct. No. CR-19-012263) |
| v. |  |
| PHILLIP MICHAEL MOJARRO, | **OPINION** |
| Defendant and Appellant. |  |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County. Joseph R. Distaso, Judge.

Jonathan D. Roberts, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Clara M. Levers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Hill, P. J., Smith, J. and Meehan, J.

# INTRODUCTION

On December 12, 2019, defendant Phillip Michael Mojarro hit Brian W.[1] at least three times with an aluminum bat while Brian was sleeping. As a result of the attack, Brian suffered face and wrist fractures along with a concussion, resulting in an eight-day hospital stay. Defendant was subsequently convicted by a jury of assault with a deadly weapon and assault likely to produce great bodily injury, both with great bodily injury enhancements. He was sentenced to a total term of six years.

On appeal, defendant contends: (1) the crimes of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1))[2] and assault likely to cause great bodily injury (*id.*, subd. (a)(4)) are two statements of the same offense and (2) count III (*id.*, subd. (a)(4)) must be vacated because both offenses were based on a single course of conduct in violation of section 954.

Based on our Supreme Court's recent holding in *People v. Aguayo* (Aug. 22, 2022, S254554) ___ Cal.5th ___ [2022 Cal. LEXIS 5013] (*Aguayo*), which concluded the crimes of assault with a deadly weapon and assault likely to cause great bodily injury are two statements of the same offense, we vacate defendant's conviction as to count III.

# STATEMENT OF CASE

On October 26, 2020, a jury convicted defendant of assault with a deadly weapon (§ 245, subd. (a)(1), count II) and assault likely to produce great bodily injury (*id.*, subd. (a)(4), count III).[3] As to both counts, the jury found true a great bodily injury enhancement (§ 12022.7, subd. (a)). The trial court sentenced defendant on count II to

---

[1] Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names or initials. No disrespect is intended.

[2] All further references are to the Penal Code.

[3] The jury acquitted defendant of attempted murder (§§ 187, subd. (a), 664, count I) and hung as to the lesser included offense of attempted voluntary manslaughter (§§ 192, subd. (a), 664). The People subsequently agreed not to retry the case as to the lesser offense of count I and agreed to proceed with sentencing as to counts II and III.

the middle term of three years, plus a three-year consecutive term for the great bodily injury enhancement (§ 12022.7, subd. (a)), for a total term of six years. As to count III, the trial court imposed the middle term of three years, plus a three-year consecutive term for the great bodily injury enhancement (§ 12022.7, subd. (a)), but stayed the sentence pursuant to section 654.

## STATEMENT OF FACTS

### I.  The Offense

Defendant and Brian were homeless in Modesto and occasionally slept in the same area. Defendant testified he believed Brian stole his clothes, toiletries, cell phone, and cell phone charger because he was the only person sleeping in that area.[4] Defendant further testified he believed Brian sexually assaulted his friend a few hours prior to the confrontation.

On December 12, 2019, at approximately 3:40 a.m., defendant confronted Brian and asked, " 'Where is the rest of my stuff?' " and " '[H]ey, did you sexually assault my friend?' " Brian replied, " '[T]hat he was the only one,' " and defendant replied, " 'That's the wrong answer.' " At this point, defendant hit Brian in the right leg with an aluminum bat and told Brian to leave the area. Brian then sat up and defendant swung the bat and struck Brian in the arm and swung again and struck Brian in the head.[5] Brian suffered face and wrist fractures along with a concussion and was in the hospital for eight days. Brian testified he still suffers headaches and now requires glasses.

Brian then fled and ran across the street to a fast-food restaurant. Defendant did not chase Brian and ended up disposing the bat near the location of the incident. Brian arrived at the restaurant's drive-through window, banged on the window and screamed

---

**4**    Brian was impeached during his testimony with prior theft-related felonies.

**5**    Defendant testified Brian reached for the bat after being hit in the leg. Therefore, defendant swung the bat and hit Brian in the hand and face in self-defense.

for help, and then fainted on the floor. Lesly P. worked at the drive-through and observed Brian covered in blood. At this point, Lesly's boss called 911.

## II.     Subsequent Law Enforcement Investigation

Officer M. Harris of the Modesto Police Department arrived on scene and noticed a blood trail from the fast-food restaurant to the area where defendant and Brian slept. Harris also noticed blood spatter on the drive-through window. Brian was transported to the hospital where it was determined he sustained fractures to his right eye, right wrist, face, jaw, and cheekbone. He also suffered lacerations to his face, a broken nose, and a concussion.

A week later, Detective J. Lawrence interviewed defendant. Defendant admitted he stole a bat from a nearby liquor store and confronted Brian about the missing property. He claimed he had stolen the bat for protection and admitted to striking Brian with the bat, but claimed it was because he was scared and Brian was much bigger than him.

## DISCUSSION

Defendant contends his convictions for assault with a deadly weapon (§ 245, subd. (a)(1), count II) and assault likely to produce great bodily injury (*id*., subd. (a)(4), count III) violate section 954 because he was convicted of two statements of the same offense and both were based on a single course of conduct. We agree.

## I.     Applicable Law

Section 954 provides in relevant part:

> "An accusatory pleading may charge [1] two or different offenses connected together in their commission, or [2] different statements of the same offense or [3] two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated. The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged .…"

4.

Section 954 authorizes multiple convictions for different or distinct offenses, " 'but does not permit multiple convictions for a different statement of the same offense *when it is based on the same act or course of conduct*.' " (*People v. Vidana* (2016) 1 Cal.5th 632, 650 (*Vidana*), italics added.) The test for whether a statute defines different offenses or merely different ways of committing the same offense turns on the legislative intent. " '[I]f the Legislature meant to define only one offense, we may not turn it into two.' " (*Id.* at p. 637.)

Initially, the crimes of assault with a deadly weapon and assault with force likely to cause great bodily injury were contained in a single statute defining aggravated assault. (§ 245, former subd. (a)(1).) Under this provision, " '[e]very person who commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury' " was guilty of aggravated assault. (*In re Mosley* (1970) 1 Cal.3d 913, 918, fn. 4.) "Our Supreme Court interpreted this language as defining 'only one offense' that could be committed in two different ways, explaining 'assault by means of force likely to produce great bodily injury is not an offense separate from—and certainly not an offense lesser than and included within—the offense of assault with a deadly weapon.' " (*People v. Waxlax* (2021) 72 Cal.App.5th 579, 587, quoting *In re Mosley*, at p. 919, fn. 5.) Additionally, in *People v. Aguilar* (1997) 16 Cal.4th 1023, our Supreme Court concluded, "[A]n aggravated assault case under section 245, subdivision (a)(1), is *functionally identical* regardless of whether … the defendant employed a weapon alleged to be deadly as used or employed force likely to produce great bodily injury; in either instance, the decision turns on the nature of the force used." (*Id.* at p. 1035, italics added.)

Subsequently, "[i]n 2011, the Legislature amended section 245, subdivision (a)(1) again, this time placing force-likely and deadly weapon assault into two separate numbered paragraphs—deadly weapon assault remained in subdivision (a)(1) and force-likely assault could now be found in newly created subdivision (a)(4). (Assem. Bill

5.

No. 1026 (2011–2012 Reg. Sess.); Stats. 2011, ch. 183, § 1.)" (*People v. Waxlax*, *supra*, 72 Cal.App.5th at p. 588.) "The Legislature explained the amendment served a disambiguating purpose for recidivist sentencing." (*Ibid.*)

Prior to *Aguayo*, courts were divided on whether these two types of aggravated assaults were separate offenses or the same offense for purposes of section 954. (See, e.g., *People v. Brunton* (2018) 23 Cal.App.5th 1097 [different statements of the same offense]; but see *In re Jonathan R.* (2016) 3 Cal.App.5th 963 [separate offenses].) In *Brunton*, the court concluded that "[b]ased on *Vidana's* reasoning, we conclude the statutory structure of section 245 is not, by itself, such an unambiguous expression of the Legislature's intent that we may not resort to additional material in ascertaining intent." (*Brunton*, at p. 1107.) Rather, "[b]ased on [the court's] review of the legislative history materials … [the court] conclude[d] the Legislature did not intend for its 2011 amendment of section 245 to create two offenses where the former statute set forth only one." (*Ibid.*) This is because "the Legislature made clear it was making only 'technical, nonsubstantive changes' to section 245 (Legis. Counsel's Dig., Assem. Bill No. 1026 (2011–2012 Reg. Sess.)) to provide clarity for purposes of recidivist enhancements—it was not 'creat[ing] any new felonies or expand[ing] the punishment for any existing felonies.' (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1026 (2011–2012 Reg. Sess.) as introduced Feb. 18, 2011, p. 3)." (*Ibid.*)

During the pendency of this appeal, our Supreme Court resolved this division and held that assault with a deadly weapon (§ 245, subd. (a)(1)) and force likely assault (*id.*, subd. (a)(4)) are different statements of the same offense for purposes of section 954. (*Aguayo*, *supra*, ___ Cal.5th ___ [2022 Cal. LEXIS 5013, pp. 19–20].) Specifically, the court analyzed the plain language of section 245 and "conclude[d] that the text of section 245 does not definitively show whether the Legislature intended assault with a deadly weapon (§ 245[, subd.] (a)(1)) and force likely assault (§ 245[, subd.] (a)(4)) to be separate offenses or different statements of the same offense." (*Aguayo*, [p. 11].)

6.

Although "assault with a deadly weapon and force likely assault are 'self-contained' in separate subparagraphs with separate punishments[,] … [t]he Penal Code supplies numerous examples of separate, 'self-contained' provisions that constitute alternative means of committing a single offense. (See, e.g., *Vidana*, *supra*, 1 Cal.5th at p. 648 [though larceny (§ 484[, subd.] (a)) and embezzlement (§ 503) are contained in separate provisions, there is clear intent to create single crime of theft]; *People v. Duffy* (2020) 51 Cal.App.5th 257, 265 [carrying concealed firearm in a vehicle (§ 25400, subd. (a)(1)) or on the person (§ 25400, subd. (a)(3)) is 'a singular offense']; see *id.* at pp. 264–266; *People v. Ryan* [(2006) 138 Cal.App.4th 360, 366] ['there was but one crime of forgery [§ 470, subds. (a), (d)], and that the various acts proscribed by the statute were simply different means of committing that offense'].)" (*Aguayo*, [p. 12].) Additionally, "these two offenses a[re] 'functionally identical'—except with respect to inherently dangerous weapons—in that '[b]oth the "weapon or instrument" clause of the statute and the "force likely" clause look to the probability or capability of producing great bodily injury' … [and] [t]hus, as [our Supreme Court] indicated in *Vidana*, a comparison of the offenses' elements does 'not definitely resolve' whether assault with a deadly weapon and force likely assault 'are a single offense.' " (*Aguayo*, [p. 13].)

Because the court concluded the plain language of the statute did not resolve the issue, the court analyzed "section 245's legislative history to ascertain the Legislature's intent." (*Aguayo*, *supra*, ___ Cal.5th ___ [2022 Cal. LEXIS 5013, p. 14].) "Notably, our [Supreme Court's] decisions in *Mosley* and *Aguilar*—indicating that former section 245 'defines only one offense' [citation], and reaffirming the view that force likely assault is ' "not an offense separate from" ' assault with a deadly weapon [citations]—both preceded the 2011 amendment to section 245. [Therefore, t]he Legislature is presumed to be aware of these earlier cases when it made what the legislative history described as 'technical, nonsubstantive changes' to section 245 in 2011. [Citations.] Accordingly, had the Legislature intended in 2011 to create separate offenses by relocating force likely

7.

assault into its own paragraph, it presumably would have made that intent clear."
(*Aguayo*, [p. 18].) Therefore, our Supreme Court held:

> "Our reading of this legislative history, combined with *Mosley*'s and
> *Aguilar*'s statement that force likely assault is ' "not an offense separate
> from" ' assault with a deadly weapon, [citations], and the Legislature's
> subsequent failure to indicate otherwise, convinces us that the Legislature
> intended assault with a deadly weapon and force likely assault to constitute
> 'different statements of the same offense' for purposes of section 954."
> (*Aguayo*, *supra*, ___ Cal.5th ___ [2022 Cal. LEXIS 5013, pp. 19–20].)

Because our Supreme Court concluded a violation of section 245, subdivision (a)(1) *and* a violation of section 245, subdivision (a)(4) are different statements of the same of the offense, we must now determine whether defendant's convictions for both forms of aggravated assault were separate, distinct offenses, or whether they were based on a single act or course of conduct. (*Vidana*, *supra*, 1 Cal.5th at p. 650; see also § 954.)

## II. Analysis

The People argue that section 954 is no impediment to defendant's dual convictions because "[t]he record demonstrates a reasonable probability that the jury found [defendant] guilty of counts [II] and [III] based on two discrete acts." *Aguayo* is again instructive. In *Aguayo*, the People argued the "jury could have found [the] defendant guilty of both counts based on multiple different acts, 'including the 50 times [the defendant] hit her father with the bicycle chain or … her additional act of throwing the [ceramic pot] at his head.' " (*Aguayo*, *supra*, ___ Cal.5th ___ [2022 Cal. LEXIS 5013, pp. 30–31].) The People also argued "the jury had before it evidence that [the] defendant 'committed at least two separate assaults with the bicycle chain.' " (*Aguayo*, [p. 31].)

Our Supreme Court disagreed because "the jury did not make a finding of fact identifying which act supported which specific count … [and t]he prosecution did not identify the particular act supporting each aggravated assault, and it did little to

8.

differentiate between the two counts." (*Aguayo*, *supra*, ___ Cal.5th ___ [2022 Cal. LEXIS 5013, [pp. 31–32].) Moreover, "the charging allegation and verdict form did not specify the act of force [the] defendant used to commit the force likely assault[] [and] [t]he respective jury instructions (listing the element of whether "[t]he defendant did an act [with a deadly weapon other than a firearm] that by its nature would directly and probably result in the application of force to the person") also did not identify what act [the] defendant committed for each count." (*Aguayo*, [p. 32].) This conclusion is supported by the fact that "[d]uring closing argument, the prosecution referred to [the] defendant hitting Father with the bicycle chain to establish *both* the assault with a deadly weapon and force likely assault counts[] [and] [a]t the same time, with regard to the force likely assault count, the prosecution referred to [the] defendant using both the bicycle chain and the ceramic pot to assault Father." (*Ibid*., italics in original.)

The court further held that "[c]ontrary to the [People's] contention, the issue is not whether the jury *could have* found that [the] defendant struck Father at least two times and up to 50 times—which would be relevant to whether there was sufficient evidence to sustain each conviction [citation]—but whether there is a reasonable probability the jury failed to do so." (*Aguayo*, *supra*, ___ Cal.5th ___ [2022 Cal. LEXIS 5013, [p. 33], italics in original.) Therefore, "there is a reasonable probability that the jury would have convicted [the] defendant of only one, and not both, aggravated assault offenses. In this circumstance, we cannot affirm based on our own view of what the evidence would support." (*Aguayo*, [p. 34].)

Here, both counts II and III were based on a *single course of conduct* of defendant attacking Brian with an aluminum baseball bat. Although defendant swung the bat three separate times, the prosecutor did not argue each individual swing constituted a separate assault, but rather argued the entire attack constituted aggravated assault. (See *Aguayo*, *supra*, ___ Cal.5th ___ [2022 Cal. LEXIS 5013, [p. 32].) Specifically, as to both counts, the prosecutor stated, "So bear with me, but they are the exact same elements as

read aloud to you, that the defendant did an *act* that by its nature would directly and probably result in the application of force to a person. The *act* that he did was hit someone with a baseball bat." (Italics added.) Moreover, during rebuttal, the prosecutor stated:

> "Well, no, it's not that he would have continued to hit him, it's that he most certainly did. He did continue to hit him, until [Brian] had several fractures in his face. Until [Brian], with his right arm, trying to cover his face and getting hit again and fracturing his arm."

The prosecutor continued:

> "Now, Count II is the assault with a deadly weapon and the great bodily injury. And so if you do not believe that I have proven my case beyond a reasonable doubt and then you would go and you would find simple assault true. [¶] … [¶]

> "And the same for Count III, assault likely to cause great bodily injury. So you can find the lesser crimes true if it is unreasonable that all of the circumstantial and direct evidence have proven to you beyond a reasonable doubt an abiding conviction that [defendant] did indeed cause severe injury, great bodily injury to [Brian]'s face and arm in Count II and Count III with a deadly weapon, the aluminum bat. And that him deciding to get the bat, go over there, try to get [Brian] out, [Brian] doesn't get up fast enough, so then he gets more angry and hits him, then you can always find the lesser."

Additionally, the first amended information, jury instructions, and verdict forms did not specify the act *or* acts of force defendant committed for each individual count.[6] (*Aguayo*,

---

**6** As to count II, the jury was instructed as follows:

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant did an act with a deadly weapon other than a firearm that by its nature would directly and probably result in the application of force to a person;

"2. The defendant did that act willfully;

10.

*supra*, ___ Cal.5th ___ [2022 Cal. LEXIS 5013, [p. 32].) Accordingly, we conclude defendant's convictions for counts II and III were based on the same act or course of conduct in violation of section 954.

Nonetheless, the People direct this court to *People v. Kopp* (2019) 38 Cal.App.5th 47 and *People v. Johnson* (2007) 150 Cal.App.4th 1467 in support of their position. In *Kopp*, defendant Hernandez "cut [the victim] at different times and with different knives [and the victim] bled profusely from the head and had several cuts to her head and face" and "Hernandez punched her in the head multiple times and kicked her in the face." (*Kopp*, at p. 58.) The court concluded defendant could be convicted of both assault with a deadly weapon and assault by means likely to cause great bodily injury because "the prosecutor focused on the use of a knife to stab and/or slash the victim" and "[t]he evidence at trial showed that Hernandez punched and kicked the victim in the head." (*Id.*

---

"3.      When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone;

"AND

"4.      When the defendant acted, he had the present ability to apply force with a deadly weapon to a person."

As to count III, the jury was instructed as follows:

"To prove that the defendant is guilty of this crime, the People must prove that:

"1.      The defendant did an act by its nature would directly and probably result in the application of force to a person, and

"2.      The force used was likely to produce great bodily injury;

"3.      The defendant did that act willfully;

"4.      When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone;

"AND

"5.      When the defendant acted, he had the present ability to apply force likely to produce great bodily injury to a person."

11.

at p. 63.) "Accordingly, the record … present[ed] *two separate acts* for each count of assault. Count 1 is based on the use of a knife. Count 2 is based on punches and kicks to the head." (*Ibid.*, italics added.) Second, the court in *Johnson* upheld multiple convictions for a violation of section 273.5, subdivision (a). (*Johnson*, at p. 1477.) The court stated, "[T]he crime described by section 273.5 is complete upon the willful and direct application of physical force upon the victim, resulting in a wound or injury. [Therefore, i]t follows that where multiple applications of physical force result in separate injuries, the perpetrator has completed multiple violations of section 273.5." (*Ibid.*) Accordingly, "the jury could have concluded that [the] defendant completed one violation of section 273.5 when he beat [the victim] about the head and face, blackening her eyes and splitting her lip; another when he held her by the throat and continued to strike her and restrain her such that she suffered bruises about her back and neck; and another when he injured her upper arm, drawing blood and leaving a visible scar." (*Ibid.*)

Both *Kopp* and *Johnson* stand for the proposition a defendant can be convicted of multiple violations of the same offense if the prosecution proves each individual act as a separate violation of that offense beyond a reasonable doubt. However, unlike in *Kopp* and *Johnson*, the prosecutor in this case did not argue during closing argument that each individual strike constituted an independent assault, but rather argued the repetitious strikes with the bat constituted both aggravated assaults. Because the prosecutor did not argue each strike constituted an independent assault, we must presume the jury convicted defendant of counts II and III based on the single attack, and not based on each individual blow by the bat. (See *Aguayo*, *supra*, ___ Cal.5th ___ [2022 Cal. LEXIS 5013, [p. 34] ["[T]here is a reasonable probability that the jury would have convicted defendant of only one, and not both, aggravated assault offenses … [and therefore,] we cannot affirm based on our own view of what the evidence would support."].)

12.

Accordingly, we vacate defendant's conviction in count III for assault by means likely to cause great bodily injury. (§ 245, subd. (a)(4).) He remains convicted in count II of assault with a deadly weapon, which fits his crime of hitting Brian with a bat and which the trial court used as the principle term in sentencing, staying the term on count III. (*Id.*, subd. (a)(1); *People v. Ryan*, *supra*, 138 Cal.App.4th at p. 371 [Court of Appeal should affirm the conviction that "more completely cover[s]" defendant's conduct].) Defendant's sentence remains the same because the trial court stayed the sentence on count III pursuant to section 654.

## DISPOSITION

The judgment is modified to vacate defendant's conviction on count III, assault likely to produce great bodily injury. Defendant's prison sentence is unchanged. The trial court is directed to amend the abstract of judgment and forward a certified copy of the amended abstract to all appropriate entities. As modified, the judgment is affirmed.