Filed 2/28/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>JASON KALUNA FUGIT,<br><br>　　　Defendant and Appellant. | A163497<br><br>(Lake County<br>　Super. Ct. No.<br>CR958308) |

Jason Kaluna Fugit appeals from a judgment of conviction and sentence imposed after a jury found him guilty of multiple offenses. He contends the court erred by instructing the jury that assault by any means of force likely to produce great bodily injury—"force-likely assault" (Pen. Code, § 245, subd. (a)(4))—was a lesser included offense of assault with a deadly weapon (§ 245, subd. (a)(1)).[1] He also contends the case must be remanded for resentencing in light of amendments to section 1170, former subdivision (b), and section 654.

We will remand the matter for the trial court to exercise its discretion under section 654 in selecting the principal term for sentencing purposes. In all other respects, the judgment will be affirmed. Because the accusatory pleading alleged that Fugit used a non-inherently deadly "ceramic mug" to perpetrate his aggravated assault, he had notice the prosecution would try to prove that the mug was used with force in a manner likely to cause great

---

[1]　Unless otherwise indicated, statutory references are to the Penal Code.

bodily injury, which would support a conviction for force-likely assault. We conclude that Fugit has not established a due process violation that would compel reversal under the facts of this case and thus do not reach the issue of whether force-likely assault is a lesser included offense under the accusatory pleading doctrine.

## I. FACTS AND PROCEDURAL HISTORY

In August 2020, the Lake County District Attorney filed an information charging Fugit in five counts: assault with a deadly weapon, "to wit, a ceramic mug" (§ 245, subd. (a)(1)—count 1); throwing an object at a vehicle with intent to cause great bodily injury (Veh. Code, § 23110, subd. (b)—count 2); vandalism (§ 594, subd. (a)—count 3); resisting an executive officer (§ 69—count 4); and resisting, obstructing, or delaying a peace officer (§ 148, subd. (a)(1)—count 5). Counts 1 through 4 were charged as felonies, and count 5 was charged as a misdemeanor. The matter proceeded to a jury trial.

### A. Evidence at Trial

On July 18, 2020, Jason Parry was driving on Lakeshore Boulevard in Lakeport. Out of the corner of his eye, he saw a heavy-set male (identified at trial as Fugit) hurl a coffee mug at his vehicle. The mug shattered the vehicle's window and sent glass fragments flying into the passenger compartment.

Two other motorists, Jason Holm and Ethan Maize, were traveling behind Parry when the incident occurred. Maize, who was directly behind Parry, saw Fugit throw a "boulder" or "rock" at Parry's vehicle, breaking the passenger window and dislocating the side mirror. Holm, who was driving directly behind Maize, also saw Fugit throw an object at Parry's vehicle.

Parry pulled over to the side of the road. Maize swerved to avoid colliding with Parry's vehicle and pulled to the shoulder to call 911. Holm

drove past Parry and Maize, parked at his nearby residence, and returned to the scene on foot.

Parry noticed that, in addition to the damage to his vehicle's passenger window and side mirror, there was liquid on the passenger door. In a search for the object Fugit threw, Parry found a ceramic mug across the road, broken into pieces.

Lake County Sheriff's Office Deputies James Rhine and Matthew McCabe each responded to the scene in uniform and in a marked patrol vehicle. After speaking with Parry, Holm, and Fugit (who had remained at the scene), Rhine informed Fugit he was under arrest. When Rhine reached for Fugit's hand to secure him in handcuffs, Fugit turned away, locked his hands together, and refused to comply with commands. McCabe attempted to assist in the arrest by grabbing one of Fugit's arms, to no avail.

Due to, among other things, the size difference between Deputy Rhine (five feet seven inches tall and 190 pounds) and Fugit (six feet one inch tall and 315 pounds) and their precarious location on a narrow shoulder next to the roadway, Rhine had concerns for his safety. Rhine warned Fugit that he would be tased if he continued to resist, but Fugit was undeterred. Rhine deployed his taser, incapacitating Fugit and allowing Rhine and McCabe to complete the arrest.

B. Jury Instruction at Issue

As to count 1, the court instructed the jury on the charged count of assault with a deadly weapon (§ 245, subd. (a)(1)), the lesser included offense of simple assault (§ 240), and, as another lesser included offense and over defense counsel's objection, force-likely assault (§ 245, subd. (a)(4)).

C. <u>Verdict and Motion to Vacate Conviction</u>

In October 2020, the jury acquitted Fugit of assault with a deadly weapon but convicted him of force-likely assault (§ 245, subd. (a)(4)). The jury acquitted Fugit of throwing an object at a vehicle with intent to cause great bodily injury but convicted him of the lesser included offense of misdemeanor throwing an object at a vehicle (Veh. Code, § 23110, subd. (a)). The jury also convicted Fugit on the other charged counts.

On November 6, 2020, defense counsel filed a statement in mitigation, asking the court to reduce the force-likely assault to a misdemeanor. Counsel argued it was unclear whether force-likely assault was a lesser included offense of assault with a deadly weapon, noting that CALCRIM No. 875 indicated only simple assault to be a lesser included offense. Counsel stated there was "either a specific on-the-record objection to instructing on PC 245(a)(4), or at the very least there were objections made in chambers discussions, and if not objected to on the record, this was clearly ineffective assistance of counsel."

At the next hearing, the court stated: "[W]hen I read your statement in mitigation, I became immediately concerned that I perhaps had not analyzed and evaluated the jury instruction appropriately. And for what it's worth, that caused me to revisit that issue. [¶] The issue being whether or not assault with force likely . . . is a lesser included offense than assault with a deadly weapon." Defense counsel recalled that he had offered concerns about the instruction but was unsure whether he did so on the record. The prosecutor stated, "my memory is we didn't discuss it on the record." Defense counsel then suggested that the failure to raise the argument on the record might give rise to an ineffective-assistance claim, and asked the court to appoint different counsel to file a new trial motion concerning the jury

4

instruction on section 245, subdivision (a)(4). The court appointed attorney Lorraine Purviance to explore a new trial motion on the issue.

Purviance filed a "motion to vacate conviction for PC 245(a)(4)" on February 26, 2021. In March 2020, after a hearing, the court denied the motion. The court acknowledged that the instruction had been given over counsel's objection.

D. Initial Sentencing

In August 2021, the court sentenced Fugit to an aggregate term of four years eight months in state prison, comprised of the upper term of four years for the force-likely assault conviction (designated the principal term) and eight months (one-third the midterm) on the conviction for resisting an executive officer. The court imposed the upper term of three years on the vandalism conviction, which it stayed pursuant to section 654, and imposed concurrent 180-day sentences on the remaining two convictions (counts 2 & 5).

E. Appeal and Limited Remand for Resentencing

Fugit appealed. In February 2022, we granted Fugit a limited stay and remand to seek relief in the trial court based on recent amendments to section 1170, subdivision (b), under Senate Bill 567.

In March 2022, the trial court reduced Fugit's sentence on the force-likely assault from the upper term of four years to the midterm of three years, resulting in a revised aggregate term of three years eight months in state prison. The court also reduced the sentence on the vandalism conviction from the upper term of three years to the midterm of two years, which remained stayed pursuant to section 654.

## II. <u>DISCUSSION</u>

### A. <u>Instruction on Force-Likely Assault as Lesser Included Offense</u>

A jury "may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged . . . ." (§ 1159.) As a matter of state constitutional law, courts must instruct on all lesser offenses necessarily included within the filed charges if there is substantial evidence of the lesser offense, whether or not the parties request or oppose the instruction. (*People v. Rundle* (2008) 43 Cal.4th 76, 142, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421.) The primary aim is to give the jury the opportunity to render a verdict no harsher or more lenient than the evidence merits, thus facilitating the jury's "truth-ascertainment function." (*People v. Barton* (1995) 12 Cal.4th 186, 196; *People v. Breverman* (1998) 19 Cal.4th 142, 155.) " 'These policies reflect concern [not only] for the rights of persons accused of crimes [but also] for the overall administration of justice.' " (*Breverman, supra*, 19 Cal.4th at p. 155.)

Whether a defendant charged with one crime may be convicted of a lesser uncharged crime depends, therefore, on whether the uncharged crime is necessarily included in the charged crime. (*People v. Reed* (2006) 38 Cal.4th 1224, 1227 (*Reed*).) Here, Fugit contends that force-likely assault is not a lesser included offense of assault with a deadly weapon, so the court's instruction on force-likely assault violated due process and his conviction for that offense must be reversed.[2]

---

[2] Although no objection to the jury instruction appears in the appellate record, the record does contain ample indication that defense counsel had objected in statements not captured by the court reporter. Respondent agrees that Fugit did not waive or forfeit his challenge.

In determining whether an uncharged offense is necessarily included in a charged offense, our Supreme Court has applied two tests: the elements test and the accusatory pleading test. (*Reed*, *supra*, 38 Cal.4th at p. 1227.)

1. Elements Test

" 'Under the elements test, a court determines whether, as a matter of law, the statutory definition of the greater offense necessarily includes the lesser offense.' [Citation.] This test is satisfied if ' "all legal elements of the lesser offense are also elements of the greater." ' " (*People v. Alvarez* (2019) 32 Cal.App.5th 781, 786; see *Reed, supra*, 38 Cal.4th at p. 1227.) If a court can identify even one circumstance in which a person could violate one provision without also violating the other, the latter provision is not a necessarily included offense of the former. (*Reed, supra*, 38 Cal.4th at p. 1227.)

Fugit and respondent agree, as do we, that the elements test is not met here. (*In re L.J.* (2021) 72 Cal.App.5th 37, 50.) As one of its elements, assault with a deadly weapon may be perpetrated by (1) using an inherently deadly weapon (i.e., one that is deadly or dangerous in its ordinary use, such as a dirk or a dagger), *or* by (2) using a non-inherently deadly weapon such that it is capable of and likely to cause death or great bodily injury. (CALCRIM No. 875.) Force-likely assault, by contrast, always requires that the defendant did an act that by its nature would directly and probably result in the application of force to a person and the force used was likely to produce great bodily injury. (CALCRIM No. 875.) Because this element of force-likely assault does not have to be proved for assault with a deadly weapon if the weapon is inherently deadly, there is a circumstance in which a defendant could perpetrate assault with a deadly weapon without perpetrating force-

7

likely assault; force-likely assault is therefore not a lesser included offense under the elements test.[3]

### 2. Accusatory Pleading Test

The accusatory pleading test looks to the facts alleged in the information. " '[I]f the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former.' " (*People v. Munoz* (2019) 31 Cal.App.5th 143, 153; see *Reed*, *supra*, 38 Cal.4th at pp. 1227–1228.)

The purpose of the accusatory pleading test is to "ensure that defendants receive notice before they can be convicted of an uncharged crime." (*Reed*, *supra,* 38 Cal.4th at p. 1229.) " 'As to a lesser included offense, the required notice is given when the specific language of the accusatory pleading adequately warns the defendant that the People will seek to prove the elements of the lesser offense.' " (*Ibid.*)

As relevant here, the information alleged that Fugit committed assault with a deadly weapon under section 245, subdivision (a)(1) in that he "did willfully and unlawfully commit an assault upon JASON PARRY with a deadly weapon, *to wit, a ceramic mug*." (Italics added.) The question is whether these alleged facts included all the elements of the purported lesser

---

[3]    In their appellate briefs, the parties discussed a court of appeal decision then on review by our Supreme Court, which was later reversed in *People v. Aguayo* (2022) 13 Cal.5th 974 (*Aguayo*). *Aguayo* held that force-likely assault and assault with a deadly weapon are " 'different statements of the same offense' " for purposes of section 954 (forbidding multiple convictions for one offense), so a defendant cannot be convicted of both types of aggravated assault based on the same act or course of conduct. (*Id*. at p. 996.) *Aguayo* does not decide the question at issue here—whether an uncharged crime of force-likely assault is a lesser included offense of the charged crime of assault with a deadly weapon. (*Id*. at p. 993, fn. 7.)

offense of force-likely assault. (See *People v. Pack* (Feb. 7, 2023, A161564) 2023 Cal.App. LEXIS 88 at \*9 (*Pack*) [under the accusatory pleading test, a lesser offense is included within a greater if the charging allegations include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed].)

CALCRIM No. 875 sets forth the elements of both assault with a deadly weapon and force-likely assault. As mentioned, the crimes differ as to one element. Force-likely assault requires proof that the "defendant did an act that by its nature would directly and probably result in the application of force to a person" and *the force was "likely to produce great bodily injury."* (CALCRIM No. 875, italics added.) Assault with a deadly weapon requires proof that the "defendant did an act *with* [*a deadly weapon* other than a firearm] that by its nature would directly and probably result in the application of force to a person." (CALCRIM No. 875, italics added; see *Aguayo, supra,* 13 Cal.5th at pp. 984–985 & fn. 4.)

However, as a matter of law, the "deadly weapon" element is satisfied by proof of "any object, instrument, or weapon []that is inherently deadly *or* one[]that is used in such a way that it is capable of causing and likely to cause death or great bodily injury." (CALCRIM No. 875, italics added.) Here, the weapon alleged in the accusatory pleading – a "ceramic mug" – is not an inherently deadly weapon because its ordinary use is not to inflict harm on another person (CALCRIM No. 875; see *People v. Aguilar* (1997) 16 Cal.4th 1023, 1029), so to prove the charged offense under section 245, subdivision (a)(1), as a matter of law the People had to prove that Fugit used the mug "in such a way that it is capable of causing and *likely to cause death or great bodily injury."* (CALCRIM No. 875, italics added.) Thus, by specifically alleging the weapon to be a "ceramic mug," the accusatory pleading

9

necessarily put Fugit on notice of the prosecution's intent to prove that he used the mug in a manner likely to cause great bodily injury, which, respondent argues, would suffice for force-likely assault as well as assault with a deadly weapon.

We note the slight difference in language: doing an act that "by its nature would directly and probably result in the application of force" with "any object . . . that is used in such a way that it is capable of causing and likely to cause death or great bodily injury" for assault with a deadly weapon; and doing an "act that by its nature would directly and probably result in the application of force. . . likely to produce great bodily injury" for force-likely assault. (CALCRIM No. 875.) But neither party to this appeal offers any conceivable scenario in which a ceramic mug could be used in "such a way that it is capable of causing and likely to cause death or great bodily injury" (for assault with a deadly weapon) that would not involve "force . . . likely to produce great bodily injury" (as required for force-likely assault). Simply put, it has not been shown that, without application of force, a ceramic mug could cause great bodily injury.

The facts alleged in the accusatory pleading therefore include all the elements of force-likely assault, such that "the greater cannot be committed without also committing the lesser." (*People v. Birks* (1998) 19 Cal.4th 108, 117.) As a matter of law and considered in the abstract, the crime of assault with a deadly weapon with a ceramic mug, as alleged, cannot be committed without necessarily committing force-likely assault. (*People v. Steele* (2000) 83 Cal.App.4th 212, 218.) The allegations in the information thus gave Fugit adequate notice that the People would seek to prove facts establishing the elements of force-likely assault.

Our conclusion is consistent with this appellate district's decision earlier this month in *Pack*, *supra*, 2023 Cal.App. LEXIS 88. There, the defendant was alleged to have committed assault with a deadly weapon using a " 'stabbing weapon.' " (*Id*. at *10.) The court concluded that, because a " 'stabbing weapon' " *is* an inherently dangerous weapon under the law, and the language of the information did not indicate whether Pack used the weapon in a manner likely to produce great bodily injury, force-likely assault was not a lesser included offense under the accusatory pleading test. (*Id*. at *10–11.) As to that conclusion, we agree: proof of assault with a deadly weapon with an *inherently* deadly weapon does not require proof that the object was used "in such a way that it is capable of causing and likely to cause death or great bodily injury" (CALCRIM No. 875), so the accusatory pleading in *Pack* did not give notice of a prosecutorial intention to prove the facts that would be necessary for force-likely assault. *Pack* is distinguishable from the matter at hand, however, because the accusatory pleading in this case did not allege assault with a deadly weapon with an inherently deadly weapon, but with a mug for which the prosecution would be obligated to demonstrate use in a manner likely to cause death or great bodily injury.

We also find Fugit's arguments on these points unpersuasive. In his reply brief, Fugit argues that "the People clearly did <u>not</u> prove that he used the ceramic mug in a manner likely to cause death or great bodily injury, as the jury <u>acquitted</u> appellant of ADW." The issue under the accusatory pleading test, however, is not whether the prosecutor ultimately proved that Fugit used the mug in that manner, but whether the pleading gave Fugit *notice* that the prosecutor would undertake to prove it.

Fugit further suggests that force-likely assault cannot be a lesser included offense of assault with a deadly weapon because a note in the

11

discussion under CALCRIM No. 875 lists only simple assault as a lesser included offense. We disagree. Beside the fact that we are not bound by the use notes of a pattern jury instruction, CALCRIM No. 875 instructs on both assault with a deadly weapon *and* force-likely assault; its reference to simple assault as a lesser included offense means that simple assault is a lesser included offense of both assault with a deadly weapon and force-likely assault, not that force-likely assault can never be a lesser included offense of assault with a deadly weapon.

Finally, Fugit speculates that the court's description of force-likely assault as a "lesser included offense" misled the jury into believing that a conviction for that count would be less harsh, or more lenient, than a conviction for assault with a deadly weapon. His argument misses the mark for multiple reasons.

First, although the court referred to force-likely assault as a "lesser included offense" and a "lesser crime," it did not tell the jury that a force-likely assault conviction would lead to less punishment. And even if that had been the jury's assumption, the court instructed the jury: "You must reach your verdict without any consideration of punishment." We presume the jury followed the instruction. (*People v. Zarazua* (2022) 85 Cal.App.5th 639, 645.)

Second, to the extent any juror did think a conviction for force-likely assault was less harsh, the juror was not misled: although the two statutory subdivisions provide for the same term of sentence, assault with a deadly weapon is classified as a serious felony (§ 1192.7, subd. (c)(31)) while force-likely assault is not (see *People v. Winters* (2001) 93 Cal.App.4th 273, 277).

Third, the accusatory pleading test turns on whether the pleading gave the defendant sufficient notice to make an instruction proper, not on how the jury might have thereafter deliberated and chosen its verdict. Whether an

12

offense is "lesser included" turns on the elements of the crime, not the punishment.[4]  The relative punishment, and speculation as to the jury's assumptions about the punishment, do not affect the conclusion that the pleading gave notice of alleged facts that would be sufficient to convict Fugit of force-likely assault.

If anything, Fugit's arguments suggest that the force-likely instruction in this case was consonant with the purpose behind instructing on lesser included offenses and the aim of the accusatory pleading doctrine.  The primary purpose of instructing on lesser included offenses is to enable the jury to reach a verdict no harsher or more lenient than warranted by the evidence.  (*People v. Barton, supra,* 12 Cal.4th at p. 196; *People v. Breverman, supra,* 19 Cal.4th at p. 155.)  The purpose of the accusatory pleading test is to "ensure that defendants receive notice before they can be convicted of an uncharged crime."  (*Reed*, *supra,* 38 Cal.4th at p. 1229.)  Fugit does not demonstrate that he received a verdict harsher (or more lenient) than the evidence merited or that he failed to receive sufficient notice.

That said, there arises a slightly different concern.  While it is true that, under the facts alleged here, the crime of assault with a deadly weapon (with a ceramic mug) cannot be committed without necessarily committing force-likely assault – thus making it an "included" offense and arguably satisfying the accusatory pleading test – the converse is also true:  force-

---

[4]    Fugit states:  "The United States Supreme Court has indicated that 'lesser' in this context means lesser in terms of magnitude of punishment.  (*Carter v. United States* (2000) 530 U.S. 255, 260, fn. 2.)"  Not so.  *Carter* stated that a "lesser offense" had been referred to as one that carried less punishment, but a "lesser *included* offense" – which we deal with here – turns on the elements test.  (*Ibid*.)  While it may be that a lesser included offense usually carries a lesser penalty, under California law the determination turns on the elements.

13

likely assault could not be committed under the alleged facts without necessarily committing assault with a deadly weapon. Can it still be said that the uncharged force-likely assault is a "*lesser* included" offense of the charged assault with a deadly weapon? Are the two crimes, in this context, more akin to alternative offenses than to a lesser offense and a greater offense, and, if so, does that make a difference? While their equality in punishment does not dictate whether the accusatory pleading test is met, should it affect whether instruction on the uncharged offense is justified (or compelled) as a *lesser* included offense? Or, to put it another way, where there are two species of aggravated assault that our Supreme Court has deemed to be " 'different statements of the same offense' " for purposes of section 954 (*Aguayo, supra,* 13 Cal.5th at p. 996), can either of them be categorized as a "lesser included" offense of the other?[5] We think that result to be unlikely.

However, we need not (and do not) answer these questions to resolve this appeal. The crux of the matter here is simply whether the trial judge committed prejudicial error by instructing the jury on force-likely assault when the crime was not explicitly charged in the accusatory pleading. As has long been recognized, a trial court may permit amendment of the information " 'at any stage of the proceeding, up to and including the close of trial,' " if the

---

[5] We also note that a trial court is not obligated to instruct the jury on a lesser included offense unless there is substantial evidence that the defendant committed the lesser crime *without* committing the greater. (E.g., *People v. Breverman, supra,* 19 Cal.4th at p. 154; *People v. Smith* (2013) 57 Cal.4th 232, 245.) The question here, however, is not whether the court erred in failing to give a lesser included instruction, but whether it erred in giving it. The parties do not address the issue of substantial evidence, and Fugit does not contend that giving the force-likely instruction was improper on this ground.

defendant's substantial rights are not violated (unless the new offense is not supported by evidence at the preliminary hearing). (*People v. Fernandez* (2013) 216 Cal.App.4th 540, 554; § 1009.) Moreover, there is "no difference in principle between adding a new offense at trial by amending the information and adding the same charge by verdict forms and jury instructions." (*People v. Toro* (1989) 47 Cal.3d 966, 976 [requiring the defense to object in either situation], disapproved on another ground in *People v. Guiuan* (1998) 18 Cal.4th 558, 568, fn. 3.)

Fugit has not established prejudicial error in adding the force-likely assault charge by verdict form and jury instruction. The record does not reveal any ground for the trial court to have denied a motion to amend the accusatory pleading if such a motion had been made, or any meaningful difference in this case in the People moving to amend the pleading (and then requesting the force-likely instruction) rather than just requesting the force-likely instruction. As discussed, the information notified Fugit of the prosecutor's intent to prove facts that would establish force-likely assault as well as assault with a deadly weapon. Fugit made no claim in the trial court, and makes no claim here, that he was unable to defend against a force-likely charge due to it being added at the time of the jury instruction conference. Further, there was substantial evidence to support a conviction for force-likely assault, and Fugit faced no harsher sentence if convicted of force-likely assault than he would for assault with a deadly weapon. The two charges are, at least for section 954 purposes, " 'different statements of the same offense.' " (*Aguayo, supra,* 13 Cal.5th at pp. 993, 996; *People v. Brunton* (2018) 23 Cal.App.5th 1097, 1107 ["when based on a defendant's single act of using a noninherently dangerous object in a manner likely to produce great bodily injury, section 245, (a)(1) and (4) are merely different statements of the

15

same offense"].) Because Fugit had a reasonable opportunity to prepare and present a defense to force-likely assault and could not have been taken by surprise by the evidence at trial, there is no due process violation. (*People v. Jones* (1990) 51 Cal.3d 294, 317.)

Because there was no due process error as claimed here by Fugit, he cannot prevail in his appeal. There is, therefore, no cause to speculate on what the jury would have done if the instruction had not been given. We do note, on the other hand, the overwhelming evidence that supported the conviction for force-likely assault: Fugit launched a mug with such force that it broke off the mirror of an occupied motor vehicle, shattered the vehicle's window, and sent shards of glass flying into the passenger compartment.[6]

For the foregoing reasons, including especially the absence of any due process violation, Fugit fails to establish that the court's instruction on force-likely assault is reversible error.[7]

---

[6] The jury acquitted Fugit of Vehicle Code section 23110, subdivision (b), which requires proof of a defendant's "intent to do great bodily injury," convicting him instead of Vehicle Code section 23110, subdivision (a), which has no such intent requirement. Like Vehicle Code section 23110, subdivision (a), force-likely assault does not require proof of intent to cause great bodily injury. Instead, it requires merely that the act (of throwing the mug) was willful and that the defendant was aware of facts that would lead a "reasonable person to realize" that the "act by its nature would directly and probably result in the application of force to someone." (CALCRIM No. 875.)

[7] We emphasize the narrowness of our holding. We are concerned in this appeal with whether the court's instructing the jury on force-likely assault, in addition to (and as a purported lesser-included offense of) assault with a deadly weapon, constituted reversible error where the accusatory pleading alleged that assault with a deadly weapon was perpetrated with a non-inherently deadly weapon (the ceramic mug). We do not address whether it might have been reversible error if, for example, the court in this case had *declined* to instruct the jury on force-likely assault, which would raise the issue of whether the court was *obligated* to give the instruction.

16

B.  Remend for Resentencing

    1.  SB 567

Effective January 1, 2022, Senate Bill 567 (SB 567) altered the determinate sentencing law by amending section 1170, former subdivision (b), to make the midterm the presumptive sentence in the absence of specified circumstances.  (Stats. 2021, ch. 731, § 1.3, adding § 1170, subd. (b)(1), (2); *People v. Flores* (2022) 73 Cal.App.5th 1032, 1038.)

Fugit contends in his opening brief that the case should be remanded under SB 567 for the upper term originally imposed on his vandalism conviction to be reduced to the middle term.  As respondent points out and Fugit acknowledges in his reply brief, it already has been:  after the limited stay and remand we granted, the trial court reduced Fugit's sentence on the vandalism conviction from the upper term of three years to the midterm of two years.

    2.  AB 518

Effective January 1, 2022, Assembly Bill 518 (AB 518) amended section 654 by removing the requirement that a defendant be punished under the provision providing for the longest term of imprisonment, and granting the trial court discretion to impose punishment under any applicable provision.  (Stats. 2021, ch. 441, § 1.)

Fugit seeks remand under AB 518 for the trial court to exercise its new discretion to select a different principal term and impose a shorter punishment.  Respondent agrees that Fugit is entitled to the retroactive benefit of AB 518.  (*People v. Jones* (2022) 79 Cal.App.5th 37, 45; *People v. Mani* (2022) 74 Cal.App.5th 343, 379.)  Because the record does not show that the trial court considered its discretion under AB 518 during the prior limited remand for resentencing under SB 567, we will remand for that purpose.

## III.  DISPOSITION

The matter is remanded for the trial court to exercise its discretion under Penal Code section 654, as amended, in the selection of the principal term for sentencing purposes.  In all other respects, the judgment is affirmed.

_____

Wiseman, J. *

We concur:

_____

Simons, Acting P.J.

_____

Burns, J.

*People v. Fugit* / A163497

_____

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19

A163497 / People v. Fugit

Trial Court:  Lake County Superior Court

Trial Judge:  Hon. Michael S. Lunas

Counsel:  Joy A. Maulitz; By Appointment of the First District Court of Appeal under the First District Appellate Project, for Petitioner.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Eric D. Share, Supervising Deputy Attorney General, and Kelly A. Styger, Deputy Attorney General, for Respondent.