Filed 5/30/18

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D071911 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD267484) |
| RICHARD BRUNTON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Laura Halgren, Judge. Affirmed, as modified, with directions.

Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

Based on a single act of choking his cellmate with a tightly rolled towel, a jury found defendant Richard Brunton guilty of assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1); hereafter, § 245(a)(1)) and assault by means of force likely to produce great bodily injury (force-likely assault) (§ 245, subd. (a)(4); hereafter, § 245(a)(4)), and found true the allegation that he personally used a deadly weapon (the towel) in the commission of the force-likely assault (§ 12022, subd. (b)(1)).[2] The trial court sentenced Brunton to six years in prison, consisting of four years on the force-likely assault conviction, one year for the deadly weapon enhancement attached to that conviction, and one year for a prison prior. The court imposed, but stayed under section 654, a four-year sentence on the assault-with-a-deadly-weapon conviction.

On appeal, Brunton contends we must vacate his force-likely assault conviction because it is merely a different statement of the same offense for which he was also convicted (assault with a deadly weapon). (See § 954; *People v. Vidana* (2016) 1 Cal.5th 632, 650 (*Vidana*) [" 'section 954 . . . does not permit multiple convictions for a different statement of the same offense when it is based on the same act or course of conduct' "].) Brunton further contends that, because the single offense of which he was convicted included the element that he used a deadly weapon, we must strike the deadly weapon enhancement attached to the force-likely assault conviction. (§ 12022, subd. (b)(1)

---

[1] Undesignated statutory references are to the Penal Code.

[2] The jury also found Brunton guilty of making a criminal threat (§ 422) and resisting a peace officer (§ 148, subd. (a)(1)). Brunton does not challenge these convictions in this appeal.

2

[enhancement does not apply when "use of a deadly or dangerous weapon is an element of [the] offense"].)

On the record before us, where Brunton's convictions for assault with a deadly weapon and force-likely assault are based on a single act that involved the use of a noninherently dangerous object in a manner likely to produce death or great bodily injury, we agree that one of the duplicative convictions must be vacated. Accordingly, we remand with directions to the trial court to strike one of the duplicative convictions, to strike the deadly weapon enhancement attached to the force-likely assault conviction, and for resentencing consistent with this opinion. In all other respects, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Background*

Around 3:00 a.m. on May 29, 2016, Christopher G. was booked into the San Diego Central Jail for theft, and was assigned to share a cell with Brunton. When Christopher entered the cell, Brunton "star[ed] [him] down." Seeing that Brunton already had the top bunk, Christopher placed his bedding on the bottom bunk and his toiletries on an adjacent desk.

Brunton said, "Don't put your fuckin' stuff there. I stand there to get up on the bed." Christopher apologized, adding, "You don't have to be so rude about it." Brunton replied, "You calling me rude?" Christopher responded, "No, I'm not calling you rude. I said you don't have to be so rude about it, though." Christopher got into his bunk and pulled his blanket over his head.

3

Brunton then punched Christopher hard twice in the back of his head and asked, "You calling me rude?" Christopher responded, "No, man. I want to get the fuck out of here. What are you doing?" He got out of bed and started pushing a button by the cell door to summon a guard. Christopher added, "All I want to do is eat breakfast." Brunton responded, "It's going to be hard to eat without no teeth. . . . I'm going to kill you today. I'm going to murder you. . . . You're going to meet Jesus today." Christopher kept pressing the call button, but no one responded—the communication device in this cell apparently was inoperative.

Brunton kicked and kneed Christopher in the ribs. Christopher screamed for the guards to help him. Brunton grabbed a bath towel, twisted it tightly like a rope, and wrapped it around Christopher's neck. Brunton kneed Christopher in the ribs, dropping him to his knees. Brunton kneed him again and cinched the towel tight. Christopher could not breathe and was "on the cusp of going unconscious." He thought he was going to die.

A guard heard Christopher's "desperate, . . . urgent" yelling, and investigated. The guard observed Brunton standing over and forcefully choking Christopher with a towel. Christopher was "completely limp" and appeared to be unconscious. The guard banged on the cell door with his flashlight and ordered Brunton to let go of Christopher and back away. Brunton did not comply. The guard opened the food port on the cell door and repeated his commands. Again, Brunton did not comply.

The guard radioed to the guard tower to have the cell door opened. With the door open, the guard pointed his Taser at Brunton and ordered him to let go of Christopher.

4

Brunton let go and backed away. The guard ordered Brunton to get on the floor, but Brunton instead stepped on the desk and climbed into his top bunk.

The guard dragged Christopher out of the cell, and another guard handcuffed Brunton and escorted him out of the cell. Christopher was removed from the housing module by gurney and transported to a hospital for medical evaluation.

*Charges, Jury Verdicts, and Sentencing*

In the operative amended information, the San Diego County District Attorney charged Brunton with four counts stemming from these events: attempted murder (§§ 187, subd. (a), 664); force-likely assault (§ 245(a)(4)); assault with a deadly weapon (§ 245(a)(1)); making a criminal threat (§ 422); and resisting, delaying, or obstructing a peace officer (§ 148, subd. (a)(1)). The amended information included allegations that Brunton personally used a deadly weapon in his commission of the force-likely assault (§ 12022, subd. (b)(1)), and had one prison prior (§ 667.5, subd. (b)).

After deliberating for about six hours, the jury found Brunton not guilty of attempted murder, and guilty of the remaining counts. The jury found true the deadly-weapon-use allegation, and Brunton later admitted the prison prior allegation.

The trial court denied Brunton probation and sentenced him to six years in prison, consisting of the upper term of four years for the force-likely assault, one year for the deadly-weapon-use enhancement attached to the force-likely assault conviction, and one year for the prison prior. The court imposed, but stayed under section 654, the upper term of four years for the assault-with-a-deadly-weapon conviction. Finally, the court

5

imposed concurrent terms of three years for the criminal-threat conviction, and one year for the resisting-a-peace-officer conviction.

## DISCUSSION

Brunton contends that because the force-likely assault count and the assault-with-a-deadly-weapon count both arose from a single act involving his use of a noninherently dangerous object in a manner likely to produce death or great bodily injury, the counts are merely restatements of the same offense, for which he may be convicted only once. He further contends we must strike the deadly weapon enhancement attached to the force-likely assault conviction because use of a deadly weapon was an element of that offense. On the record before us, we agree.

### I. *Relevant Legal Principles*

### A. *Section 954*

Section 954, which generally governs joinder of counts, provides in part:

> "An accusatory pleading may charge [1] two or more different offenses connected together in their commission, or [2] different statements of the same offense or [3] two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated. The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged . . . ."

The California Supreme Court recently held that " '[t]he most reasonable construction of the language in section 954 is that the statute authorizes multiple convictions for different or distinct offenses, but does not permit multiple convictions for a different statement of the same offense when it is based on the same act or course of

6

conduct.' " (*Vidana*, *supra*, 1 Cal.5th at p. 650; see, e.g., *People v. Coyle* (2009) 178 Cal.App.4th 209, 217 [defendant improperly convicted of three counts of murder for killing one person, where the "three counts simply alleged alternative theories of the offense."].)[3] "Whether a statute defines different offenses or merely different ways of committing the same offense 'properly turns on the Legislature's intent in enacting these provisions, and if the Legislature meant to define only one offense, we may not turn it into two.' " (*In re C.D.* (2017) 18 Cal.App.5th 1021, 1025-1026; see *Vidana*, at p. 648.)

*Vidana* arose in the context of an employee charged with both larceny (§ 484, subd. (a)) and embezzlement (§ 503) arising from the same act of skimming cash from customer payments. (*Vidana*, *supra*, 1 Cal.5th at p. 635.) The court concluded larceny and embezzlement are merely "different statements of the same offense, and that a defendant may not be convicted of both based on the same course of conduct." (*Id.* at p. 648, fn. omitted.)

In support of treating larceny and embezzlement as separate offenses, the *Vidana* court observed they "have different elements," "neither is a lesser included offense of the other," and they are found in "self-contained" statutes. (*Vidana*, *supra*, 1 Cal.5th at p. 648.) On the other hand, the court observed that the Legislature enacted section 490a, which provides that any statute that " 'mentions larceny, embezzlement, or stealing . . . shall . . . be hereafter read and interpreted as if the word "theft" were substituted

---

3     "Section 954 . . . concerns the propriety of multiple *convictions*, not multiple *punishments*, which are governed by section 654." (*People v. Gonzalez* (2014) 60 Cal.4th 533, 536-537 (*Gonzalez*), italics added.)

therefor.' " (*Vidana*, at p. 648, quoting § 490a.)  The court concluded "the obvious intent

of this statute . . . was to create a single crime of theft."  (*Vidana*, at p. 648.)  The court

also noted larceny and embezzlement "generally have the same punishment."  (*Id.* at pp.

648-649.)  On balance, the court concluded larceny and embezzlement "are simply

different ways of describing the behavior proscribed by those statutes."  (*Id.* at p. 649.)

Consequently, the Supreme Court affirmed the striking of the defendant's larceny

conviction.  (*Id.* at p. 651 & fn. 18.)

## B.  *Section 245*

Before it was amended in 2011 (effective 2012), section 245(a)(1) set forth assault

with a deadly weapon and force-likely assault as "alternative provisions within a single

statutory subdivision."  (*In re Jonathan R.* (2016) 3 Cal.App.5th 963, 972 (*Jonathan R.*).)

That subdivision read:  "Any person who commits an assault upon the person of another

[1] with a deadly weapon or instrument other than a firearm *or* [2] by any means of force

likely to produce great bodily injury shall be punished . . . ."  (Former § 245(a)(1), italics

added.)

Courts interpreted former section 245(a)(1) as defining "only one offense, to wit,

'assault upon the person of another with a deadly weapon or instrument *or* by means of

force likely to produce great bodily injury. . . .'  The offense of assault by means of force

likely to produce great bodily injury is not an offense separate from . . . the offense of

assault with a deadly weapon."  (*In re Mosley* (1970) 1 Cal.3d 913, 919, fn. 5, italics

added; see *In re C.D.*, *supra*, 18 Cal.App.5th at p. 1028.)  Under this interpretation, "[u]se

of a deadly weapon other than a firearm or force likely to produce great bodily injury

8

were . . . two means to commit the same offense, rather than different offenses."

(*Jonathan R.*, *supra*, 3 Cal.App.5th at p. 972; see *In re C.D.*, at p. 1028.)

In *People v. Aguilar* (1997) 16 Cal.4th 1023 (*Aguilar*), the California Supreme Court explained why—"except in those cases involving an inherently dangerous weapon" (*id.* at p. 1035)—the determination of whether an aggravated assault is committed under section 245(a)(1)'s deadly weapon clause or force-likely clause is "functionally identical." (*Aguilar*, at p. 1035.) The *Aguilar* court reasoned a *noninherently* dangerous object becomes a deadly weapon (thereby satisfying section 245(a)(1)'s deadly weapon clause) only when it is *used* in a manner likely to produce death or great bodily injury (thereby also satisfying the force-likely clause). (*Aguilar*, at p. 1029.)[4]

"In 2011 . . . , the two variants of aggravated assault under section 245, former subdivision (a)(1), were placed in separate paragraphs of subdivision (a). (Stats. 2011, ch. 183, § 1.) The reason for the change was to make it easier going forward to determine whether a defendant's prior convictions for aggravated assault under section 245, subdivision (a), involved conduct subjecting the defendant to certain recidivist provisions, because enhancements such as the 'Three Strikes' law applied to prior assault convictions only when those convictions involved the use of a deadly weapon."[5] (*In re*

---

4      By contrast, "[t]here remain assaults involving weapons that are deadly per se, such as dirks and blackjacks, in which the prosecutor may argue for, and the jury convict of, aggravated assault *based on the mere character of the weapon*." (*Aguilar*, *supra*, 16 Cal.4th at p. 1037, fn. 10, italics added.)

5      Assault with a deadly weapon is always a serious felony for purposes of recidivist sentence enhancements (see § 1192.7, subd. (c)(31)), whereas force-likely assault is only

*C.D.*, *supra*, 18 Cal.App.5th at p. 1028; see *Jonathan R.*, *supra*, 3 Cal.App.5th at p. 971;

Stats. 2011, ch. 183, § 1 ["This bill would make *technical*, *nonsubstantive changes* to

these provisions."], italics added.)  The legislative history addressing this change states:

> "AB 1026 will make it easier for prosecutors and defense attorneys
> to determine whether or not a defendant's prior conviction for assault
> under . . . section 245(a)(1) involved an assault on a person with a
> deadly weapon or by any means of force likely to produce great
> bodily injury.  Under California law, an assault with a deadly
> weapon can be treated more severely than an assault likely to
> produce great bodily injury.  [¶] . . . [¶]
>
> ". . . AB 1026 does not create any new felonies or expand the
> punishment for any existing felonies.  It merely splits an ambiguous
> code section into two distinct parts."  (Sen. Com. on Pub. Safety,
> Analysis of Assem. Bill No. 1026 (2011-2012 Reg. Sess.) as
> introduced Feb. 18, 2011, p. 3.)[6]

As amended, section 245 now reads as follows with respect to assault with a

deadly weapon and force-likely assault:

> "(a)(1) Any person who commits an assault upon the person of
> another with a deadly weapon or instrument other than a firearm
> shall be punished by imprisonment in the state prison for two, three,
> or four years, or in a county jail for not exceeding one year, or by a
> fine not exceeding ten thousand dollars ($10,000), or by both the
> fine and imprisonment.  [¶] . . . [¶]
>
> "(4) Any person who commits an assault upon the person of another
> by any means of force likely to produce great bodily injury shall be
> punished by imprisonment in the state prison for two, three, or four
> years, or in a county jail for not exceeding one year, or by a fine not

---

a serious felony if the defendant actually inflicted great bodily injury (and not merely
used force likely to do so) (see § 1192.7, subd. (c)(8)).

6      We grant Brunton's unopposed request that we take judicial notice of legislative
history materials regarding section 245.

exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment."

## II. *Analysis*

Although Brunton was charged with both assault with a deadly weapon (§ 245(a)(1)) and force-likely assault (§ 245(a)(4)), the factual predicate of each count was the same—that Brunton choked his cellmate with a tightly rolled towel.[7]  Thus, although the amended information alleges *separate counts*, each count effectively asserts only a " 'different statement of *the same offense* . . . .' "  (*Vidana*, *supra*, 1 Cal.5th at p. 650, italics added.)  This is so because each count is based on the manner in which Brunton used the same noninherently dangerous object.  That is, for purposes of assault with a deadly weapon, the noninherently-dangerous towel only became a "deadly weapon" when Brunton used it in a " 'manner . . . capable of producing and likely to produce, death or great bodily injury.' "  (*Aguilar*, *supra*, 16 Cal.4th at pp. 1028-1029.)  Likewise, Brunton's conduct constituted force-likely assault only because he used the towel in a manner "likely to produce great bodily injury."  (§ 245(a)(4).)  Because both counts assert only a single offense arising from the same conduct, the jury could properly have convicted Brunton of only one count.[8]  (§ 954.)

---

[7]    The prosecutor did not argue below, nor does the Attorney General argue on appeal, that the force-likely assault count was based on Brunton punching, kicking, or kneeing his cellmate.

[8]    The proper result could have been achieved, for example, by instructing the jury with CALCRIM No. 3516 ("Multiple Counts: Alternative Charges for One Event—Dual Conviction Prohibited"), which provides in part:  "The defendant is charged in Count ___ with ___ <insert name of alleged offense> and in Count ___ with ___ <insert name of

11

The Attorney General relies on *Jonathan R.*, *supra*, 3 Cal.App.5th 963 to support the proposition that the current version of section 245 "classif[ies] each subdivision as a separate offense [that] permit[s] more than one conviction based upon the violation of more than one subdivision of section 245." (*Jonathan R.*, at p. 970.) Based on intervening developments in the law, we decline to follow *Jonathan R.*

The *Jonathan R.* court based its section 954 multiple-convictions analysis on what was then "[t]he Supreme Court's latest word on the issue." (*Jonathan R.*, *supra*, 3 Cal.App.5th at p. 969, citing *Gonzalez, supra*, 60 Cal.4th at pp. 536-537.)[9] Based on that precedent, the *Jonathan R.* court concluded the statutory structure of section 245 was, by itself, an unambiguous expression of the Legislature's intent to "creat[e] separately convictable offenses," such that the court would not examine the legislative history regarding the 2011 amendments to section 245. (*Jonathan R.*, at p. 971.)

---

alleged offense>. These are alternative charges. If you find the defendant guilty of one of these charges, you must find (him/her) not guilty of the other. You cannot find the defendant guilty of both."

[9] In *Gonzalez*, the Supreme Court considered whether the defendant, who had sexually assaulted a woman rendered unconscious by intoxication, could be properly convicted of violating both section 288a, subdivision (f) (defining oral copulation of an unconscious person) and section 288a, subdivision (i) (defining oral copulation of an intoxicated person). (*Gonzalez*, *supra*, 60 Cal.4th at p. 536.) In concluding the defendant could be convicted of both, the court explained: "Each subdivision sets forth all the elements of a crime, and each prescribes a specific punishment. Not all of these punishments are the same. That each subdivision of section 288a was drafted to be self-contained supports the view that each describes an independent offense, and therefore section 954 is no impediment to a defendant's conviction under more than one such subdivision for a single act." (*Id.* at p. 539.)

12

Now, however, the "Supreme Court's latest word on the [section 954] issue" (*Jonathan R.*, *supra*, 3 Cal.App.5th at p. 969) is *Vidana*, *supra*, 1 Cal.5th 632.  There, as already discussed, the Supreme Court undertook a detailed analysis of the legislative history behind the larceny and embezzlement statutes, concluding they constituted mere restatements of the same offense, even though they "have different elements," "neither is a lesser included offense of the other," and they are found in "self-contained" statutes. (*Id.* at p. 648.)  Based on *Vidana*'s reasoning, we conclude the statutory structure of section 245 is not, by itself, such an unambiguous expression of the Legislature's intent that we may not resort to additional material in ascertaining that intent.

Based on our review of the legislative history materials of which we have taken judicial notice (see fn. 6, *ante*), we conclude the Legislature did not intend for its 2011 amendment of section 245 to create two offenses where the former statute set forth only one.  When the Legislature acted, the courts had clearly construed former section 245(a)(1) as stating only one offense.  (See *In re Mosley*, *supra*, 1 Cal.3d at p. 919, fn. 5; *In re C.D.*, *supra*, 18 Cal.App.5th at p. 1028; *Jonathan R.*, *supra*, 3 Cal.App.5th at p. 972.)  The Legislature is presumed to have acted with knowledge of this decisional law. (See *People v. Giordano* (2007) 42 Cal.4th 644, 659.)  Yet, the Legislature made clear it was making only "technical, nonsubstantive changes" to section 245 (Stats. 2011, ch. 183, § 1) to provide clarity for purposes of recidivist enhancements—it was not "creat[ing] any new felonies or expand[ing] the punishment for any existing felonies" (Sen. Com. on Pub. Safety, Analysis of Assem. Bill No. 1026 (2011-2012 Reg. Sess.) as introduced Feb. 18, 2011, p. 3).

13

We thus conclude that, when based on a defendant's single act of using a noninherently dangerous object in a manner likely to produce great bodily injury, section 245, subdivisions (a)(1) and (a)(4) are merely different statements of the same offense such that the defendant may not be convicted of violating both subdivisions.[10]  And because in this circumstance a defendant's use of a deadly weapon (that is, a noninherently dangerous object used in a manner likely to produce death or great bodily injury) is an element of the single offense, no deadly weapon-use enhancement can properly attach to the underlying offense.  (See § 12022, subd. (b)(1) [enhancement does not apply when "use of a deadly or dangerous weapon is an element of [the] offense"]; *People v. McGee* (1993) 15 Cal.App.4th 107, 115 (*McGee*) [where the force-likely assault was the "defendant's stabbing of the victim with a knife," the defendant's "use of this deadly weapon was an element of the offense . . . even though the crime was pleaded as [a force-likely assault] rather than as an assault with a deadly weapon"].)[11] Consequently, one of the duplicative convictions and the deadly weapon enhancement must be stricken.

---

[10]     Because of this conclusion, we need not reach Brunton's alternative contention that his force-likely assault conviction must be vacated because it is a lesser included offense of assault with a deadly weapon.

[11]     The *McGee* court warned that a contrary conclusion would unfairly yield disparate punishments for similarly situated defendants, determined solely by whether the prosecutor chose to charge the defendant with assault with a deadly weapon (to which a deadly weapon enhancement undeniably could not attach) or force-likely assault (to which a deadly weapon enhancement could attach, absent the *McGee* court's conclusion to the contrary).  (*McGee*, *supra*, 15 Cal.App.4th at p. 117.)

At oral argument, Brunton and the Attorney General agreed that if we were to reach this conclusion, the appropriate remedy would be for us to remand the matter for resentencing (e.g., because the trial court's concurrent/consecutive analysis regarding other counts may differ in light of the stricken deadly weapon enhancement). We agree, subject to the caveat that Brunton's "original aggregate prison term cannot be *increased* on remand . . . ." (*People v. Burbine* (2003) 106 Cal.App.4th 1250, 1253.)

DISPOSITION

The matter is remanded to the trial court with directions to (1) vacate Brunton's conviction on either count 2 for assault by means of force likely to produce great bodily injury, or count 3 for assault with a deadly weapon; (2) strike the one-year deadly weapon enhancement; and (3) resentence Brunton consistent with this opinion. In all other respects, the judgment is affirmed.

HALLER, J.

WE CONCUR:

BENKE, Acting P. J.

IRION, J.

15