Filed 12/27/23  P. v. Garcia CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C097092 |
| v. | (Super. Ct. No. 21FE017421) |
| ELADIO GONZALEZ GARCIA, | |
| Defendant and Appellant. | |

A jury found defendant Eladio Gonzalez Garcia guilty on two counts each of making a criminal threat, assault with a deadly weapon, and assault by means of force likely to produce great bodily injury after he threatened his sister and nephew with a meat cleaver.  The trial court sentenced defendant to an aggregate 13 years four months in prison.

Defendant now contends (1) his trial counsel was ineffective in failing to object to testimony about his prior uncharged misconduct, and (2) under *People v. Aguayo* (2022) 13 Cal.5th 974 (*Aguayo*), he should not have been convicted of both assault with a deadly weapon and assault by means of force likely to produce great bodily injury.

Agreeing with defendant's second contention, we will remand the matter to the trial court with direction to vacate, as to each victim, either the conviction for assault with a deadly weapon or assault with force likely to produce great bodily injury.  We will otherwise affirm the judgment.

1

BACKGROUND

Defendant brandished a meat cleaver at his sister I.G. and threatened her while he was intoxicated, saying, "Come at me bitch, I'm going to kill you." His sister's son V.P., defendant's nephew, arrived and defendant approached him with the cleaver, saying he would beat and kill him. Defendant swung the cleaver but the nephew dodged it. After a call to 911, law enforcement detained defendant.

As to the sister, the prosecution charged defendant with making a criminal threat (Pen. Code, § 422, subd. (a)[1] -- count one), assault with a deadly weapon (§ 245, subd. (a)(1) -- count three), and assault with force likely to produce great bodily injury (§ 245, subd. (a)(4) -- count four). The prosecution asserted similar charges based on defendant's conduct toward the nephew. (§§ 422, subd. (a) [count two], 245, subd. (a)(1) [count five], 245, subd. (a)(4) [count six].) The prosecution alleged that defendant used a deadly weapon in making the criminal threats, and further alleged that a prior 2005 criminal threats conviction was a prior strike (§ 422).

Before trial, the prosecution sought in limine to admit evidence of the prior strike conviction and prior instances of violence between defendant and the victims. The prosecutor argued the new criminal threats charges required her to show the victims' state of mind, and their history with defendant would do that. The same applied to the prior criminal threat conviction, which involved defendant's girlfriend. The trial court allowed the evidence, saying it was relevant to show defendant's motive and intent.

The sister testified there had been other times when defendant's conduct caused her to call law enforcement. In one instance, a nearby trailer was on fire and the sister believed defendant was the cause. On another occasion, defendant got into a fight with the nephew over a debit card and said the sister and nephew "were going to get it."

---

[1] Undesignated statutory references are to the Penal Code.

According to the sister, defendant had been violent with her and others for her entire adult life, although this was the first time he used a weapon.

During a break in the sister's testimony, the trial court told the parties it would admonish the jury to consider the uncharged misconduct evidence only to evaluate defendant's motive and intent, and both parties agreed. After the sister testified, the trial court instructed the jury that her testimony about "other instances of confrontation and conflict among the family" could only be considered to assess defendant's motive and intent.

The nephew corroborated the sister's testimony about defendant's behavior, adding that defendant had threatened him or other family members "to make us feel scared." After the nephew testified, the trial court again admonished the jury to consider the evidence of prior incidents only to assess defendant's motive and intent.

The jury also heard testimony from A.P., the nephew's brother and the sister's other son. When the prosecutor asked him about his relationship with defendant, A.P. said:

"So over the years since he's been in and out of jail, he's been coming to the house and living in the back. And over the years he has had some good moments and some bad moments, but most of these were bad moments. Never really threatening, but more of like making it really uncomfortable to live at the place. And it's always been -- we always had to be on our toes.

"As a kid I can remember incidents where he'd argue with my mom because he was over intoxicated, breaking the windows, trying to get through the windows to the door of the house. At the time, I was really young. I was maybe 12 at the time. I couldn't defend the family. There was times where I was traumatized from things like that.

"So over the years it just kind of developed, the same relationship almost. There was times where he would hang out and be a normal guy, but this would be, like, maybe

3

a month or two out of jail. And then after that, he'd go back to his old ways, could never trust him again, kind of a little iffy to trust people that are always intoxicated."

The prosecutor asked if A.P. cared about defendant, and A.P. responded, "I mean, I don't wish him to die or anything because he's my family, but I mean, him being gone for this time that he's been so far, there's been a lot of peace at the house. So I mean, it's only been pros rather than cons than anything."

Defense counsel did not object to either of the prosecutor's questions. At the end of A.P.'s testimony, the trial court repeated the admonition to consider the testimony of other incidents only to assess defendant's motive and intent. The trial court struck the references to defendant serving jail time and instructed the jury to disregard them.

Defense counsel began his closing argument by noting that, although the prosecutor had introduced significant evidence about defendant's history of arguments with his family members, there was no testimony defendant had ever physically attacked the sister before the night in question. He also argued defendant acted in self-defense.

The jury found defendant guilty on all counts and the trial court found true the prior strike allegation. At sentencing, the trial court imposed sentences on each conviction but stayed the sentences on the convictions for assault with force likely to produce great bodily injury, for a total aggregate sentence of 13 years four months in prison.

## DISCUSSION

### I

Defendant contends his trial counsel was ineffective in failing to object to the admission of A.P.'s[2] testimony about his relationship with defendant. Defendant claims the evidence was inadmissible under Evidence Code sections 1101, subdivision (a), 350, and 352.

---

[2] Although defendant identifies various testimony of uncharged misconduct, his argument focuses on A.P.'s testimony.

The burden of proving ineffective assistance of counsel is on the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) To establish constitutionally inadequate representation, the defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. (*Ibid*.)

We defer to trial counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel. (*People v. Weaver* (2001) 26 Cal.4th 876, 925.) On direct appeal, "competency is presumed unless the record affirmatively excludes a rational basis for the trial attorney's choice." (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1260, italics omitted.) "If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation. [Citation.]" (*People v. Gray* (2005) 37 Cal.4th 168, 207.) Failure to assert a meritless position does not demonstrate ineffective assistance of counsel. (*People v. Kipp* (1998) 18 Cal.4th 349, 377.)

Under Evidence Code section 1101, subdivision (a), "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." But such evidence is admissible to prove, among other things, motive or intent. (Evid. Code, § 1101, subd. (b).) Similarly, under Evidence Code section 352, a trial court "may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

Defense counsel had plausible tactical reasons not to object to A.P.'s testimony about his relationship with defendant. First, as the People note, the trial court not only allowed testimony about the relationship between the victims and defendant, but also

about the prior 2005 criminal threat conviction, which involved defendant's conduct towards the mother of his children, with whom he had a romantic relationship that ended in 2008. Given the prior ruling on similar evidence, defense counsel may have concluded an objection to A.P.'s testimony would be futile. (*People v. Price* (1991) 1 Cal.4th 324, 387 ["Counsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be futile"].)

Second, defense counsel could have intended to use defendant's family dynamics to undermine the criminal threats charges, which required a showing the victims were in "sustained fear for [their] own safety." (§ 422.) Evidence of regular arguments or other meaningless threats in the past could have reduced the likelihood the victims feared the threats on this occasion. Consistent with this theory, A.P. noted the sister argued with family members all the time and made a similar reference to defendant's arguments with the sister in the testimony to which defendant now objects. During closing argument, defense counsel cited this testimony, observing that defendant could be "a loud mouth" and would argue, but that the sister "would go toe to toe with him." Defense counsel argued that was the relationship they had but it did not mean defendant was violent. Defense counsel argued that threats were "a mutual thing . . . they were going back and forth." The argument was consistent with defense counsel's theory that defendant was acting in self-defense. If defense counsel was attempting to use defendant's history of conflict with his family members to show it was defendant, and not the victims, who feared for his safety, it would not make sense to object to evidence showing previous instances of that conflict.

Given the reasons defense counsel may have had for declining to object, defendant has not shown he received ineffective assistance of counsel.

## II

Defendant further contends it was improper to convict him of both assault with a deadly weapon and assault with force likely to produce great bodily injury as to the sister

6

and the nephew.  He argues he could only be convicted of one count of aggravated assault as to each victim.  The People agree remand is warranted, and so do we.

The California Supreme Court has held that assault with a deadly weapon and assault with force likely to produce great bodily injury are the same offense and a defendant may not be convicted of both based on the same act or course of conduct. (*Aguayo*, *supra*, 13 Cal.5th at pp. 979, 993.)  Here, both parties agree the case should be remanded so the trial court may determine which convictions to strike.  The Supreme Court expressed no opinion on the proper remedy (see *Aguayo*, at p. 996), but we agree with the parties that correcting this error requires discretion that is best exercised by the trial court in the first instance.  (See *People v. Brunton* (2018) 23 Cal.App.5th 1097, 1107-1108.)  Consequently, we will remand the case with direction.

## DISPOSITION

The matter is remanded to the trial court with direction to vacate, as to each victim, either the conviction for assault with a deadly weapon or the conviction for assault with force likely to produce great bodily injury.  The judgment is otherwise affirmed.  The trial court shall prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.


                                             /S/
                                   MAURO, Acting P. J.


We concur:


     /S/
DUARTE, J.


     /S/
BOULWARE EURIE, J.