Filed 1/30/26  P. v. Tobler CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KEITH BRIAN TOBLER,<br><br>    Defendant and Appellant. | F087755<br><br>(Super. Ct. No. BF189233A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Brian M. McNamara, Judge.

Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Amanda D. Cary and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Keith Brian Tobler was convicted of several crimes after he fired a gun at the head of Michael Williams at close range. Defendant contends the court prejudicially erred by failing to instruct the jury on unanimity and attempted voluntary manslaughter based on heat of passion or sudden quarrel. He also challenges the trial court's finding that he suffered a prior serious felony conviction. We reject these arguments and affirm the judgment in its entirety.

## BACKGROUND

In a consolidated, amended information filed January 10, 2024 (the information), the District Attorney of Kern County charged defendant with attempted murder (Pen. Code,[1] §§ 664, 187, subd. (a), 189; count 1) with a personal firearm discharge enhancement (§ 12022.53, subd. (c)) and a great bodily injury enhancement (§ 12022.53, subd. (d)); assault with a semiautomatic firearm (§ 245, subd. (b); count 2) with a personal firearm use enhancement (§ 12022.5, subd. (a)) and a great bodily injury enhancement (§ 12022.7); assault with a firearm (§ 245, subd. (a)(2); count 3) with a personal firearm use enhancement (§ 12022.5 subd. (a)) and a great bodily injury enhancement (§ 12022.7); unlawful possession of a firearm as a felon (§ 29800, subd. (a)(1); counts 4, 6) with enhancements for being armed with a deadly weapon (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii)); unlawful possession of ammunition (§ 30305, subd. (a)(1); counts 5, 7) with enhancements for being armed with a deadly weapon (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii)); and evading proper identification by a police officer (§ 148.9, subd. (a); count 8). The information alleged that counts 1 through 5 occurred on February 11, 2022, while counts 6 through 8 occurred on April 6, 2021.

The information also alleged two prior "strike" convictions within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) and two prior

---

[1] Undesignated statutory references are to the Penal Code.

serious felony convictions (§ 667, subd. (a)).  Finally, the information included six sentencing enhancement allegations.  (Cal. Rules of Court, rule 4.421(a)(1) & (b)(1), (2), (3), (4), (5).)

A jury convicted defendant on all counts and found the firearm sentencing enhancement allegations true on January 26, 2024.  The jury found not true the allegation that the attempted murder was willful, deliberate, and premeditated.

The aggravating sentencing factors were bifurcated from the jury trial, and defendant agreed to a court trial on the bifurcated issues.  The court found true the prior strike and serious felony conviction allegations and the sentencing enhancement allegations.

*Sentence*

The court sentenced defendant on March 14, 2024, as follows:  on count 1, 44 years to life in prison, plus 20 years (§ 12022.53, subd. (c)) stayed (§ 1385), plus 10 years (§ 667, subd. (a)); on count 2, 32 years to life in prison, plus 10 years (§ 12022.5, subd. (a)), plus three years (§ 12022.7, subd. (a)), plus 10 years (§ 667, subd. (a)), punishment on the enhancements were stayed (§ 654); on count 3, 27 years to life, plus 10 years (§ 12022.5, subd. (a)), plus three years (§ 12022.7, subd. (a)), plus 10 years (§ 667, subd. (a)), punishment on the enhancements were stayed (§ 654); on each of counts 4, 5, and 7, stayed (§ 654) terms of 25 years to life; on count 6, a concurrent term of 25 years to life; and on count 8, a concurrent term of 180 days in jail.

Defendant filed a timely notice of appeal on March 14, 2024.

**FACTS**

*Events of April 6, 2021*

Bakersfield Police Officer Anthony Manriquez testified that on the afternoon of April 6, 2021, he was dispatched to a gas station minimart in Bakersfield.  Defendant was exiting the minimart as Manriquez arrived.  Inside of a blue sedan, officers found a sling

3.

bag with a handgun inside. Defendant told officers the sedan belonged to his girlfriend and that his name was Keith Anderson.

The parties stipulated that prior to April 6, 2021, defendant had been convicted of a felony and was prohibited from possessing firearms or ammunition.

*Events of February 11, 2022*

Surveillance footage from February 11, 2022, at a Fastrip gas station on 34th Street was admitted at trial. Footage from the dash camera of a medical transport vehicle that arrived at the Fastrip was also admitted at trial.

The footage showed two cars pulling into adjacent parking spots across the street from the Fastrip. Eventually, a man exited from each car.

More than 10 minutes later, a white vehicle with a damaged door pulled up to a pump at the Fastrip gas station. The occupant of that vehicle was later identified as Williams.

Several minutes later, one of the men who had parked across the street, walked to the Fastrip. Based on a prior booking photograph, Bakersfield Police Detective Nicholas Benavente opined at trial that this individual was defendant.

Defendant eventually approached Williams. Defendant was wearing a sling bag. Defendant and Williams engaged in what a witness described as a loud back and forth conversation. During the conversation, the other man who had parked across the street approached and stood nearby. Based on a prior booking photograph, Benavente opined at trial that this individual was Demarcus Shepard.

During the exchange, defendant pulled out a gun from the sling bag and fired one shot at Williams's face.[2] A witness described seeing an African-American wearing a

---

[2]     Outside the presence of the jury, the prosecutor referenced evidence that the shooting was gang related in that Williams had released a rap song "dissing" other gangs. However, during *in limine* proceedings, the prosecution informed the court that it would not be presenting any gang evidence, and that a witness who heard the conversation was advised not to characterize the argument as gang related.

white shirt with what looked to be blood on it run to a nearby Chevron station. Williams was eventually taken to the hospital by ambulance. Williams had surgery and survived his injuries.[3]

## DISCUSSION

I.     No Unanimity Instruction was Required Under the Continuous Course of Conduct Exception

Defendant contends the court prejudicially erred by failing to instruct the jury on unanimity.

Defendant was charged with attempted murder. "An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (§ 21a.) Thus, " '[a]ttempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.' " (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1136.)

In closing summation, the prosecutor identified multiple direct acts committed by defendant: exiting his vehicle with a firearm; walking across the street towards Williams with the firearm; approaching Williams and pulling out the firearm; raising the firearm; pointing the firearm at Williams's head; and firing the firearm. The prosecutor argued, "Those are all separate steps. And you only need one."

Defendant contends that because the prosecutor identified multiple "direct acts," the court was required to give a sua sponte unanimity instruction.

"A unanimity instruction informs the jury that it may not find the defendant guilty unless it unanimously agrees that the defendant has committed the same criminal act. (See CALCRIM No. 3500.)" (*People v. Fox* (2014) 224 Cal.App.4th 424, 432, fn. 7.) "[W]hen the evidence suggests more than one discrete crime, either the prosecution must

---

**3**     The parties stipulated that on September 11, 2022, Williams was involved in a single-car collision and died.

elect among the crimes or the court must require the jury to agree on the same criminal act." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132 (*Russo*).) "On the other hand, where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty." (*Ibid.*)

One exception to the unanimity requirement is when "the case falls within the continuous-course-of-conduct exception, which arises 'when the acts are so closely connected in time as to form part of one transaction.' " (*People v. Jennings* (2010) 50 Cal.4th 616, 679.) The idea is that such acts are so closely related that the jury would have accepted or rejected the victim's testimony "in toto." (*People v. Bui* (2011) 192 Cal.App.4th 1002, 1011.)

*Analysis*

We conclude the acts at issue here were so closely connected in time as to form one transaction. Evidence shows defendant walked across the street to Williams, engaged in an argument, pulled out the gun, and fired it at Williams's head, a process that took just over three minutes. Nothing suggests these steps were anything other than a single transaction. Given the surveillance footage, the jury would have either accepted or rejected all of these acts in toto rather than distinguishing between the acts and only accepting some of them as true. Either the jury believed defendant was the man in the surveillance footage doing the acts described, or he was not. There is no basis for concluding defendant committed some of the acts but not others.

Defendant says there was not a single attempt crime because the prosecutor argued in closing summation that the acts were each "separate steps." But a "step" is not synonymous with a distinct crime of attempt. Rather, a direct step is one *element* of attempt. It is not contradictory to say there was one crime of attempt with several underlying direct steps. Consider the analogous situation of conspiracy. Conspiracy

6.

requires specific intent to agree to commit an offense and proof of an overt act. (*Russo, supra*, 25 Cal.4th at p. 1131.) Yet, in *Russo*, the Supreme Court held: "If only one agreement existed, *only one conspiracy occurred*, whatever the precise overt act *or acts* may have been. The evidence here showed but one agreement, and hence but one conspiracy—the agreement … to murder [the victim]. Although the jury had to find at least one overt act, *whether it was one or another of several possible acts only concerns the way in which the crime was committed, i.e., the theory of the case, not whether discrete crimes were committed*. Thus, if the jurors disagreed as to what overt act was committed, and agreed only that *an* overt act was committed, they would still have unanimously found defendant guilty of a particular conspiracy. No danger exists that some jurors would think she was guilty of one conspiracy and others would think she was guilty of a different one." (*Russo, supra*, 25 Cal.4th at p. 1135, last italics in original.)

Thus, there can be multiple overt acts yet only one conspiracy. Similarly, there can be multiple "direct steps" yet only one attempt crime.

## II. The Court Did Not Err by Failing to Instruct the Jury on Attempted Voluntary Manslaughter

Defendant contends the court erred by failing to instruct the jury on the lesser included offense of attempted voluntary manslaughter based on a sudden quarrel or heat of passion.

*Law*

Under the California Constitution's due process clause, "[a] trial court must instruct the jury on a lesser included offense, whether or not the defendant so requests, whenever evidence that the defendant is guilty of only the lesser offense is substantial enough to merit consideration by the jury." (*People v. Halvorsen* (2007) 42 Cal.4th 379, 414, fn. omitted, citing *People v. Breverman* (1998) 19 Cal.4th 142, 154–155, disapproved on other grounds by *People v. Schuller* (2023) 15 Cal.5th 237, 260 fn. 7.) Substantial evidence in this context is that which a reasonable jury could find persuasive.

7.

(*Halvorsen*, at p. 414.)  In deciding whether there exists sufficient evidence to support a requested instruction, trial courts should resolve all doubts in favor of the accused. (*People v. Tufunga* (1999) 21 Cal.4th 935, 944.)  "However, speculation is not evidence and will not warrant the giving of an instruction on a lesser included offense."  (*People v. Choyce* (2025) 18 Cal.5th 86, 104.)

"Attempted voluntary manslaughter is a lesser included offense of attempted murder."  (*People v. Speight* (2014) 227 Cal.App.4th 1229, 1241.)  " 'Manslaughter is the unlawful killing of a human being without malice.'  (§ 192.)  Voluntary manslaughter is that committed 'upon a sudden quarrel or heat of passion.'  (§ 192, subd. (a).)"  (*People v. Choyce, supra*, 18 Cal.5th at p. 104.)  " 'The heat of passion requirement for manslaughter has both an objective and a subjective component.'  (*People v. Steele* (2002) 27 Cal.4th 1230, 1252, citing *People v. Wickersham*[ (1982)] 32 Cal.3d [307,] 326–327.)  'The defendant must actually, subjectively, kill under the heat of passion.'  (*Steele*, at p. 1252.)  With respect to the objective component, ' "this heat of passion must be such a passion as would naturally be aroused in the mind of an ordinarily reasonable person under the given facts and circumstances." '  (*Ibid.*)  To satisfy this objective standard, ' "the accused's heat of passion must be due to 'sufficient provocation,' " ' which must come from the victim.  (*Id.* at p. 1253.)  The provocation which incites the defendant to homicidal conduct in the heat of passion must be caused by the victim or by conduct reasonably believed by the defendant to have been engaged in by the victim.  (*People v. Moye* (2009) 47 Cal.4th 537, 549–550.)  'Adequate provocation and heat of passion must be affirmatively demonstrated.' "  (*Choyce*, at pp. 104–105.)

*Analysis*

Defendant contends there was sufficient evidence to require an attempted voluntary manslaughter instruction because a witness overheard a loud, back and forth argument for a "couple of seconds" (30 seconds at most) shortly before the shooting.  We disagree.  Evidence that an argument of unknown content occurred is insufficient to

8.

support an attempted involuntary manslaughter conviction. While words alone *can* be sufficient provocation (see *People v. Millbrook, supra*, 222 Cal.App.4th at p. 1147), they usually are not. (See, e.g., *People v. Gutierrez* (2009) 45 Cal.4th 789, 826–827; *People v. Manriquez* (2005) 37 Cal.4th 547, 585–586; *People v. Lucas* (1997) 55 Cal.App.4th 721, 739.) It is unclear whether the argument here rose to the level of sufficient provocation because there was no evidence of what Williams said to defendant. As a result, there was insufficient evidence to warrant a jury's consideration on the issue of objectively sufficient provocation. Because the evidence did not warrant a jury's consideration, the absence of an instruction on the issue was not error.

### III. Substantial Evidence Supported the Trial Court's True Finding as to Defendant's Prior Serious Felony Conviction

Defendant contends there was insufficient evidence to support the trial court's true finding as to the strike and serious felony conviction allegations for his March 17, 2015 conviction for assault with a deadly weapon.

*Additional Background*

At the bifurcated court trial, the prosecutor introduced defendant's "certified rap sheet otherwise known as a CLETS printout" as well as defendant's "969 (B) packet." The prosecutor argued, "On page six of [the rap sheet], it does show a March 17th of 2015 in Stockton, case number SF129827A, a felony conviction in Count Three for 245A1 that had a prison prior alleged as a felony for nine years prison which does show both the strike convictions."[4]

The 969 (B) packet contains an abstract of judgment from March 17, 2015, that shows a conviction in case No. SF129827A for violating section "245(A)(1)" with the description "ADW/ASSLT W/FRC LIKELY GBI."

---

[4] We were unable to locate this exhibit in the record on appeal. Arguably, this is fatal to defendant's substantial evidence challenge. However, we reject the claim on other grounds, as we will explain.

The court ultimately concluded the conviction qualifies under section 667, subdivisions (a) and (e).

*Standard of Review*

"In evaluating a claim regarding the sufficiency of the evidence, we review the record 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Westerfield* (2019) 6 Cal.5th 632, 713.) " 'We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.' " (*Ibid.*)

*Analysis*

Defendant cites *People v. Rodriguez* (1998) 17 Cal.4th 253, where the Supreme Court held that an abstract of judgment indicating the defendant had been convicted of "ASLT GBI/DLY WPN" was insufficient to establish that it was a serious felony. The Supreme Court reasoned the evidence was insufficient because, *at the time*, section 245, subdivision (a)(1) could theoretically have been violated in at least two ways that would *not* qualify as a serious felony: (1) aiding and abetting the assault without personally inflicting great bodily injury or using a firearm; or (2) using force *likely* to cause great bodily injury but not actually causing great bodily injury. (*Rodriguez*, at p. 261.)

However, that is no longer the case. " 'In 2011 … , the two variants of aggravated assault under section 245, former subdivision (a)(1), were placed in separate paragraphs of subdivision (a). (Stats. 2011, ch. 183, § 1.)' " (*People v. Brunton* (2018) 23 Cal.App.5th 1097, 1104.) Now, section 245, subdivision (a)(1) *only* relates to persons who commit assault upon the person of another with a deadly weapon or instrument, and

assault by means of force likely to cause great bodily injury is addressed in section 245, subdivision (a)(4).

Indeed, " '[t]he reason for the [statutory] change was to make it easier going forward to determine whether a defendant's prior convictions for aggravated assault under section 245, subdivision (a), involved conduct subjecting the defendant to certain recidivist provisions, because enhancements such as the "Three Strikes" law applied to prior assault convictions only when those convictions involved the use of a deadly weapon.' " (*People v. Brunton, supra*, 23 Cal.App.5th at p. 1104.)

Because there is evidence defendant was convicted of violating section 245, subdivision (a)(1) at a time where that crime *only* meant personal commitment of an assault with a deadly weapon or instrument, the trial court's finding was supported by substantial evidence.

Defendant similarly relies on *People v. Learnard* (2016) 4 Cal.App.5th 1117, where the Court of Appeal reversed in circumstances similar to the present case. But there was one crucial difference: In *Learnard*, the alleged prior serious felony conviction occurred in 2002, before the statutory changes described above. (*Id.* at pp. 1121–1122.) As a result, the identification of the defendant's prior conviction as having been under section 245, subdivision (a)(1) was not substantial evidence as to the *type* of assault conviction. (*Id.* at p. 1122.) Here, however, defendant's conviction occurred in 2015, after the statutory changes. Consequently, the identification of defendant's prior conviction as being under section 245, subdivision (a)(1) *is* substantial evidence that he was convicted of assault with a deadly weapon and not assault by means likely to cause great bodily injury.

It is true, as defendant notes, that the abstract of judgment here described defendant's violation of section 245, subdivision (a)(1) as "ADW/ASSLT W/FRC LIKELY GBI." "ASSLT W/FRC LIKELY GBI" is actually a description of the crime set forth in subdivision (a)(4), not subdivision (a)(1). But this discrepancy is not

11.

dispositive on substantial evidence review.  On this evidence, a finder of fact could reasonably conclude that the latter part of the description of defendant's prior conviction was incorrect, given that the statutory subdivision clearly refers to a different manner of committing assault.  Because we indulge every reasonable inference in favor of the court's finding, we conclude there was substantial evidence to support its decision.  The fact that there is *also* some evidence that could have supported a contrary finding does not warrant reversal.

## DISPOSITION

The judgment is affirmed.

HILL, P. J.

WE CONCUR:

MEEHAN, J.

HARRELL, J.

12.